**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Barry WOMACK, Defendant–Appellant.**

No. 00–1973.

United States Court of Appeals,
Sixth Circuit.

Dec. 6, 2001.

Before BOGGS and GILMAN, Circuit Judges; and QUIST, District Judge.*

OPINION

GILMAN, Circuit Judge.

Barry Womack appeals his conviction and sentence for being a felon in possession of a firearm. He first contends that the district court erred in denying his request for a new trial, a request based upon the results of a polygraph test that Womack took following his conviction. Womack also argues that the district court erred by not reducing his offense level in light of his alleged acceptance of responsibility for the firearm offense. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

### A. Factual background

Johnny Brown began serving as a confidential informant for the Bureau of Alcohol, Tobacco and Firearms (ATF) after he was arrested by the Detroit Police Department for impersonating a police officer.

---

\* The Honorable Gordon J. Quist, District Judge of the United States District Court for the Western District of Michigan, sitting by designation.

He was carrying a firearm at the time of his arrest on May 1, 1997. Seeking leniency, Brown provided the ATF with information concerning the source of the firearm. He specifically told the ATF that he had purchased the firearm from "C. Joe," a hair stylist at a Detroit salon.

At the ATF's request, Brown contacted C. Joe about purchasing another firearm. C. Joe explained that he could not sell a firearm to Brown because the hair salon where he worked was "too hot." But he referred Brown to Womack, who operated a candy store located next door to the hair salon. Brown then contacted Womack and asked to be informed when any firearms became available for sale.

Womack contacted Brown on May 20, 1997. He told Brown that he had "two nice pieces" for sale, but that he did not know how long he would have them. Brown then arranged to meet Womack at the candy store. He told Womack that he would be bringing a friend who was interested in buying a firearm.

The "friend" was ATF Agent Jeremy Langley. Brown and Langley entered Womack's candy store on May 21, 1997. Langley was secretly wired with a tape-recording device. Womack took Brown and Langley into the backroom of the store, where he showed them a Lorcin .38-caliber pistol. When asked by Langley if he "had anything bigger," Womack responded "maybe around the 28th or something." Langley then purchased the pistol for $240.

On June 11, 1997, Langley telephoned Womack to discuss the potential purchase of another firearm. Womack, however, had not received any additional firearms. He told Langley that he was "still waiting," and that "UPS ain't came yet I don't know what the hold up is." After this conversation, Langley had no further contact with Womack.

## B. Procedural background

A federal grand jury indicted Womack on one count of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). Womack pled not guilty. He then waived his right to a jury trial, opting to have his case tried by the district judge.

Prior to trial, Womack stipulated to two elements of the firearm charge. He first acknowledged that he had previously been convicted of a felony in state court. Womack also agreed that the Lorcin 0.38 caliber pistol had been transported in interstate commerce.

The case then proceeded to trial in the United States District Court for the Eastern District of Michigan. Because of Womack's stipulations, the government's only burden was to prove that Womack had knowingly possessed the firearm. To meet this burden, the government offered testimony from Brown and Agent Langley. Both stated that Womack sold the firearm to Langley on May 21, 1997. In addition, the government offered the tape recordings of both the May 21, 1997 firearm sale and the June 11, 1997 telephone conversation between Langley and Womack.

Testifying in his own defense, Womack conceded that he had sold the firearm to Agent Langley, but insisted that he was entrapped into possessing and selling the firearm. He claimed that Brown, posing as a police officer, had given him the firearm on May 21, 1997 for the purpose of selling it to Langley as part of a police sting operation.

Rejecting the entrapment defense, the district court found Womack guilty on the firearm count. The district court explained that Womack's "version of the facts is not credible." Furthermore, the district court pointed out that Womack had "admitted he had possession of the gun for several hours on May 21st, which, standing by itself, is a violation of the law."

Womack subsequently filed a motion pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure, the Rule that deals with a defendant's request for an acquittal after the evidence on either side is closed. He argued that, following his conviction, he had taken a polygraph test to verify his truthfulness when testifying that Brown had given him the firearm with instructions to sell it to Agent Langley as part of a police sting operation. Womack, however, did not actually seek a judgment of acquittal, but rather requested a new trial so that the district court could consider the results of the polygraph test.

The district court construed Womack's motion as one seeking a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. It then denied the motion, concluding that the polygraph test results were inadmissible and that, in any event, the test results did not overcome the other evidence of Womack's guilt.

After the denial of his request for a new trial, Womack appeared for sentencing. Womack insisted at the sentencing hearing that his offense level should be reduced pursuant to United States Sentencing Guidelines § 3E1.1, which permits a reduction where a defendant accepts responsibility for his criminal conduct. Concluding that Womack had not actually accepted responsibility for his firearm offense, the district court declined to reduce his offense level.

Womack then filed this timely appeal. He challenges the district court's denial of his request for a new trial and its decision not to reduce his offense level under § 3E1.1.

## II. ANALYSIS

### A. Standard of review

■ Womack appeals from the district court's denial of his request for a new trial. We review a district court's ruling on a motion for a new trial to determine if there was an abuse of discretion. *United States v. Willis,* 257 F.3d 636, 642 (6th Cir.2001). An abuse of discretion is found where this court is left with the "definite and firm conviction that the trial court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.,* 865 F.2d 789, 790 (6th Cir.1989).

■ In addition, Womack appeals the district court's decision not to reduce his offense level for the acceptance of responsibility. The district court's factual findings as to whether a defendant has accepted responsibility for his criminal conduct will be disturbed only if they are clearly erroneous. *United States v. Bradshaw,* 102 F.3d 204, 214 (6th Cir.1996). A factual finding is clearly erroneous where, although there is evidence to support that finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

### B. The district court did not abuse its discretion in denying Womack's request for a new trial

■ Womack contends that the district court erred in denying his request for a new trial. He moved for a new trial based upon the results of the polygraph test that he took following his conviction. Womack maintains that these test results verify the truthfulness of his trial testimony that Brown had given him the firearm to sell to Agent Langley as part of a police sting operation. Insisting that the test results bolster his credibility, Womack argues that the district court should have reconsidered his entrapment defense and granted him a new trial.

Rule 33 of the Federal Rules of Criminal Procedure allows a district court to grant a new trial based upon the discovery of new evidence. Because of the interest in preserving the finality of judgments, however, motions for a new trial based upon newly discovered evidence are "granted with caution." *United States v. Seago*, 930 F.2d 482, 488 (6th Cir.1991) (explaining that motions for a new trial are disfavored); *United States v. Stofsky*, 527 F.2d 237, 243 (2d Cir.1975) ("At the threshold it must be recognized that in the interest of according finality to a jury's verdict, a motion for a new trial based upon previously-undiscovered evidence is ordinarily not favored and should be granted only with great caution.")(internal quotation marks omitted). Newly discovered evidence will therefore warrant a new trial only where that evidence "would likely produce an acquittal." *Seago*, 930 F.2d at 488. In the present case, the district court denied Womack's request for a new trial after concluding that, even if admissible, the polygraph test results would not lead to his acquittal.

An entrapment defense in this case fails unless Womack can establish that the government induced him to possess the firearm that he sold to Agent Langley. *Mathews v. United States*, 485 U.S. 58, 62–63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) (stating "that a valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct"). The district court, however, did not believe Womack's testimony that Brown, acting on behalf of the government, induced him to possess the firearm. Instead, the district court credited the testimony of Brown, who stated that he never gave Womack the firearm to sell to Agent Langley.

Womack argues that the polygraph test results would alter the district court's assessment of his credibility. But the district court reasonably found otherwise. First, as a general matter, this court views polygraph test results with great skepticism. *United States v. Thomas*, 167 F.3d 299, 308 (6th Cir.1999) (recognizing this court's "long-held opinion that the results of a polygraph are inherently unreliable"). The polygraph test at issue in the present case, moreover, was conducted without any prior agreement that the results would be admissible regardless of whether they were favorable or unfavorable to Womack. Under such circumstances, "the probative value of the polygraph is substantially less because the defendant [has] no adverse interest at stake in the polygraph." *United States v. Sherlin*, 67 F.3d 1208, 1216–17 (6th Cir. 1995). Finally, Womack's statements to Agent Langley on June 11, 1997 about waiting for a UPS shipment before he would have another firearm to sell is completely inconsistent with an entrapment defense.

We therefore conclude that the district court did not abuse its discretion in denying Womack's request for a new trial.

C. The district court did not err in declining to reduce Womack's sentence for acceptance of responsibility

Womack next challenges the decision of the district court not to reduce his offense level pursuant to United States Sentencing Guidelines § 3E1.1, which permits a two-point reduction if "the defendant clearly demonstrates acceptance of responsibility for his offense." He insists that he accepted responsibility by admitting the factual elements of the firearm charge. Relying on *United States v. Fleener*, 900 F.2d 914 (6th Cir.1990), Womack further argues that the assertion of an

entrapment defense does not automatically preclude an offense-level reduction for acceptance of responsibility. *Id.* at 918 (holding that the district court did not clearly err in reducing the defendant's offense level under § 3E1.1 despite his assertion of an entrapment defense at trial).

The district court did not reduce Womack's offense level under § 3E1.1 because it determined that he had not truly admitted his guilt. Womack, in the district court's view, had "suggest[ed] that his offense was a technical one." The district court disagreed, and therefore concluded that Womack had "done something less" than accept responsibility for his offense.

Although he admitted the factual elements of the firearm charge, Womack pled not guilty in order to assert his entrapment defense. An offense-level reduction for acceptance of responsibility is rarely given to a defendant who enters a not guilty plea. U.S. Sentencing Guidelines Manual § 3E1.1, cmt. n. 2 (2000) (stating that "[i]n rare situations" a defendant may accept responsibility despite exercising his constitutional right to a trial). Moreover, the district court determined that Womack had lied about being entrapped into selling the firearm to Agent Langley. A similar situation occurred in *United States v. Roper*, 135 F.3d 430, 435 (6th Cir.1998), where this court held that the district court had not clearly erred in denying an offense-level reduction for acceptance of responsibility to a defendant who had "fabricated an affirmative defense of entrapment." This court stated that a district court is justified in finding no acceptance of responsibility " '[w]here . . . a defendant concocts a story that excuses his illegal conduct . . . .' " *Id.* (quoting *United States v. Greene*, 71 F.3d 232, 235 (6th Cir.1995)). Such was the finding of the district court in the case before us, a finding supported by the record and therefore not clearly erroneous.

Accordingly, we conclude that the district court did not err in declining to reduce Womack's offense level pursuant to § 3E1.1.

## III.   CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court.