**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Wesley ROPER, Defendant–Appellant.**

No. 96–1812.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 30, 1997.

Decided Feb. 3, 1998.

---

3. Because we hold the contract invalid, we need not reach the issue of pre-judgment interest.

Douglas R. Mullkoff (argued and briefed), Ann Arbor, MI, Wesley Roper, Terre Haute, IN, pro se, for Defendant–Appellant.

David Debold (argued and briefed), John C. Engstrom, Robert W. Donaldson, Asst. U.S. Attorney, Detroit, MI, for Plaintiff–Appellee.

Before: KRUPANSKY, DAUGHTREY, and COLE, Circuit Judges.

## OPINION

KRUPANSKY, Circuit Judge.

Defendant, Wesley Roper ("Roper"), has appealed from a conviction and sentence returned on a four-count indictment that charged him with distributing cocaine base on three occasions and conspiring to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Roper has alleged the following errors in his conviction and sentence: (1) the district court improperly denied his motion for a mistrial charging prosecutorial misconduct arising from the government's failure to respond to his demands for information concerning its intention to rely upon character evidence pursuant to Federal Rule of Evidence 404; (2) the district court improperly enhanced his sentence for obstructing justice without making the requisite findings to support its action; (3) the district court improperly refused to reduce his sentence because of his minor role in the charged offenses; and (4) the district court improperly declined to reduce his sentence for refusing to accept responsibility for the charged offenses.

In December 1994, the United States Drug Enforcement Agency ("DEA") began an investigation of Roper and Daryl Miller pursuant to information provided by a confidential informant named Derrick Dailey ("Dailey"). He was indicted, and during the jury trial that ensued the government developed its proof of Roper's charged criminal offenses by direct evidence in the form of a series of telephone conversations with him that resulted in three controlled purchases of cocaine base from him personally, whereupon it concluded the presentation of its case-in-chief. Apart from having no reason or necessity to go beyond its proffered direct evidence, it did not resort to or attempt to rely upon Rule 404 evidence as a vehicle to support its primary case against the accused.

Aware of the weight of the direct evidence of his charged criminal activity, Roper advanced entrapment as his defense to the charges in the indictment. J.A. at 219–20. At trial, Roper testified that despite his resistance, Dailey persisted in soliciting his participation in the instant drug conspiracy.

*Compare* J.A. at 221 ("[Dailey] was constantly telling me about how good the money was and what he had going on.") *with* J.A. at 222–23 ("[Dailey] was calling every day, maybe about two or three times a day."). Although Roper admitted that he eventually acquiesced to engage in the narcotics venture, he insisted throughout his direct examination that he had never before been involved in dealing drugs.

On cross examination, the assistant United States attorney succeeded in eliciting an admission from Roper that during 1991 he was arrested, charged, and convicted for possession of thirty-three individually packaged bags of cannabis. J.A. at 250–52. During its rebuttal evidence, the government also introduced extrinsic, substantive proof directly contradicting Roper's assertion that he had not sold drugs previously. A federal agent employed with the Bureau of Alcohol, Tobacco, and Firearms ("ATF") testified that Roper sold cocaine base to him less than two years prior to the incidents presently before the court. The government also placed into evidence a tape recording corroborating the ATF agent's testimony. Roper objected to the introduction of his historical criminal conduct. Moreover, he charged prosecutorial misconduct arising from the government's failure to place him on notice of its intent to present evidence of his "other crimes, wrongs, or acts" despite his pre-trial request for such a notification. Accordingly, he moved for a mistrial. The trial court overruled Roper's objection and denied his motion.

The jury convicted Roper on all four counts charged in the indictment. At sentencing, the court calculated the base offense level using only the drugs sold on the dates listed in the indictment. The court denied Roper's requests for a two-level "minor role" reduction and a two-level "acceptance of responsibility" reduction. The court granted the government's request for a two-level "obstruction of justice" enhancement resulting from Roper's perjury concerning his criminal history. The final offense level of 36, coupled with Roper's criminal history category of IV, yielded a sentence range between 262 and 327 months. The court imposed the minimum period of incarceration.

■ To warrant reversal, a district court's decision not to grant a mistrial must constitute an abuse of discretion. *United States v. Carroll,* 26 F.3d 1380, 1383 (6th Cir.1994). Only when the court is "firmly convinced that a mistake has been made" will it disturb the initial forum's judgment. *Id.* In its examination of a district court's denial of a mistrial motion, the primary concern of the reviewing court is "fairness to the defendant." *United States v. Forrest,* 17 F.3d 916, 919 (6th Cir.) (per curiam), *cert. denied,* 511 U.S. 1113, 114 S.Ct. 2115, 128 L.Ed.2d 673 (1994). All legal matters informing the initial decision are reviewed *de novo. United States v. Sangineto–Miranda,* 859 F.2d 1501, 1512 (6th Cir.1988).

■ All final sentencing controversies are also reviewed *de novo. United States v. Smith,* 39 F.3d 119, 122 (6th Cir.1994). In contrast, a district court's preliminary findings of fact are reviewed for clear error. *Id.* The standard is the same when reviewing a criminal defendant's relative role in the commission of an offense, *United States v. Blandford,* 33 F.3d 685, 710 (6th Cir.1994), *cert. denied,* 514 U.S. 1095, 115 S.Ct. 1821, 131 L.Ed.2d 743 (1995), and assessing his or her acceptance of responsibility for the culpable conduct,*United States v. Crousore,* 1 F.3d 382, 386 (6th Cir.1993). " 'To be clearly erroneous,' as the Court of Appeals for the Seventh Circuit has said in a different context, 'a decision must strike us as more than just maybe or probably wrong; it must … strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.' " *United States v. Perry,* 908 F.2d 56, 58 (6th Cir.) (quoting *Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.,* 866 F.2d 228, 233 (7th Cir.1988), *cert. denied,* 493 U.S. 847, 110 S.Ct. 141, 107 L.Ed.2d 100 (1989)), *cert. denied,* 498 U.S. 1002, 111 S.Ct. 565, 112 L.Ed.2d 571 (1990).

■ Roper's first assignment of error, charging prosecutorial misconduct, targets the trial court's admission of evidence that purportedly is within the dictates of Federal Rule of Evidence 404. Rule 404 provides in part that generally

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed.R.Evid. 404(b). Before his trial commenced, Roper timely requested the government to inform him of its intention to introduce extrinsic, substantive evidence of his "other crimes, wrongs, or acts" for one of the limited purposes articulated in Rule 404(b). Because the government did not respond to his demands, he has charged that the district court committed reversible error when it admitted the government's rebuttal ATF evidence against him.

In pursuing this assignment of error, the accused has misconstrued the interrelationship between Rules 404(a) and 404(b). Specifically, by ignoring the dictates of 404(a)(1) and (b) Roper has incorrectly asserted that the provisions of 404(b) mandate notice by the government before it may introduce evidence of one's criminal history for the sole purpose of proving an "intent" to participate in the charged offenses.

Rule 404(a)(1) explicitly provides that "[e]vidence of a person's character or a trait of character" is admissible "for the purpose of proving action in conformity therewith on a particular occasion" when a criminal defendant's character has been properly joined as an issue. Rule 404(b), as stated, permits the introduction of "other crimes, wrongs, or acts" evidence to prove elements that do not directly relate to character. Despite the limited scope of the application of these rules in

tandem, Congress in its commentary has explained:

> Character may itself be an element of a crime, claim, or defense. A situation of this kind is commonly referred to as "character in issue." ... No problem of the general relevancy of character evidence is involved and the present rule [Rule 404] therefore has no provision on the subject. The only question relates to allowable methods of proof, as to which ... Rule 405 [speaks].

Fed.R.Evid. 404 advisory committee's notes.[1] Initially, it should be recalled that the government, in its case-in-chief, did not seek to join Roper's character as an issue and consequently did not invoke the mandate of Rule 404. Roper voluntarily joined his "character" as an issue in the instant prosecution by pursuing his affirmative defense of entrapment and through his direct testimony. *See United States v. Faymore*, 736 F.2d 328, 335 (6th Cir.), *cert. denied*, 469 U.S. 868, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984). Once he had placed his character into issue by his direct testimony in support of his entrapment defense and by affirmatively stating that he had not at any time previously engaged in similar drug or drug-related transactions, Roper "opened the door" for the government to discredit his character during its cross-examination, as the government effectively accomplished, and by introducing extrinsic, substantive, rebuttal evidence of his criminal history of previous cocaine base sales without resorting to or relying upon Rule 404(b) and the limitations of its notice requirement.

As the Supreme Court observed in an analogous landmark case of *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948):

> [W]hile the law gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans.

---

1. Rule 405(b) instructs the procedure by which the government may rebut the proffered non-criminal character of the accused, ordaining that "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may ... be made of specific instances of that person's conduct." Fed.R.Evid. 405(b).

*Id.* at 479, 69 S.Ct. at 220. Before embarking on a strategy that Roper elected to pursue, an accused must recognize:

The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him.

*Id.; see also United States v. Manzella,* 782 F.2d 533, 546 (5th Cir.) ("When entrapment is raised as a defense, the criminal defendant makes his own character an essential trial issue. The government may therefore introduce proof of his prior wrongs.") (citing Fed. R.Evid. 405(b)), *cert. denied,* 476 U.S. 1123, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986).

Consequently, because Rule 404(a)(1) and (b) were not relied upon by the government to prove its case-in-chief against Roper, and because he voluntarily placed his character into issue by his direct testimony, and because he is presumed to know the truth or falsity of his personal criminal history and character, the government was not required to respond to his demand anchored in those rules.

Apart from the foregoing reasons that immunized the government from the dictates of Rule 404(b) and its imposed limitation, the prosecution—at its first opportunity after becoming aware of the extent and substance of Roper's entrapment defense and his direct testimony disclaiming a criminal history—provided notice to the court and the defendant of its intent to discredit his assertions by extrinsic, substantive evidence. The court, before admitting the proffered extrinsic evidence, conducted a hearing in the absence of the jury wherein the government disclosed the scope and content of its proposed rebuttal evidence.

Accordingly, the district court did not commit legal error or abuse its discretion by admitting rebuttal evidence of Roper's criminal history after he voluntarily placed his character in issue during his direct testimony.

■ In sentencing Roper, the district court increased his base offense level by two, pursuant to the United States Sentencing Guideline § 3C1.1, for his commission of perjury at trial. This provision states in full:

If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the level by 2 levels.

In *United States v. Dunnigan,* 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the Supreme Court explained that sentencing courts must independently review the government's charge of obstruction to sustain a sentence enhancement of this sort. The district court followed this direction, and observed that Roper's perjury had "forc[ed] the government to bring in the rebuttal witness [and] might have seriously compromised another ongoing investigation." J.A. at 330.

"While it is true that the court did not identify the specific statements by [Roper] that were untruthful, an examination of the colloquy between court and counsel at sentencing reveals that the district court accepted the government's argument, which did identify, with specificity, the statements by [Roper] the government claimed were untruthful." *United States v. Clark,* 982 F.2d 965, 970 (6th Cir.1993) (making this statement about another criminal defendant). Because the government's sentencing memorandum proffered that Roper had perjured himself "when he swore that he had never sold drugs before he was allegedly pressured into doing so by Derrick Daily," the district court's finding that he lied does not present a clear error.

■ Roper has sought an adjustment in his offense level on the basis of his allegedly minor role in the charged offenses. To so qualify, a defendant must be "substantially less culpable than the average participant." *United States v. Lloyd,* 10 F.3d 1197, 1220 (6th Cir.1993), *cert. denied,* 511 U.S. 1043, 114 S.Ct. 1569, 128 L.Ed.2d 213 (1994). The salient issue is the role the defendant played in relation to the activity for which the court held him or her accountable. *See United States v. Walton,* 908 F.2d 1289, 1303 (6th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). In this case, Roper was the only person with whom the

informant and the DEA agent dealt, and he actively participated in each of the three sales of cocaine base for which he had been charged. Again, the sentencing court did not clearly err.

 Roper has also objected to the district court's denial of a sentence reduction that he felt was warranted by his testimonial admission of selling cocaine base. In considering this assertion, this court emphasizes that Roper fabricated an affirmative defense of entrapment, which the government successfully rebutted. In light of these facts, this court recalls its resolution of a similar matter in *United States v. Greene,* 71 F.3d 232 (6th Cir.1995):

> A defendant's statements regarding his motivation ... shed light on the sincerity of an asserted acceptance of responsibility. Where, as the district court found here, a defendant concocts a story that excuses his illegal conduct, a court may find no acceptance of responsibility.... [T]he excuse ... might demonstrate the defendant's unwillingness to admit his culpability.

*Id.* at 235. Accordingly, the sentencing court did not commit a clear error.

The district court's judgment and sentence are **AFFIRMED**.