*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0046P (6th Cir.)
File Name: 02a0046p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

     *v.*

NEIL E. CAMPBELL (00-3089);
PAUL CARPENTER (00-3233);
RICKEY D. JONES (00-3235),
     *Defendants-Appellants.*

Nos. 00-3089/
3233/3235

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 99-00044—Sandra S. Beckwith, District Judge.

Argued and Submitted: November 2, 2001

Decided and Filed: February 1, 2002

Before: KEITH, BOGGS, and MOORE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Raymond Faller, LOEB, VOLLMAN & FRIEDMANN, Cincinnati, Ohio, Robert E. Rosenberg, Ravenna, Ohio, for Appellants. William E. Hunt, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Lucian J. Bernard,

1

PEARSON & BERNARD, Covington, Kentucky, Raymond Faller, LOEB, VOLLMAN & FRIEDMANN, Cincinnati, Ohio, Robert E. Rosenberg, Ravenna, Ohio, for Appellants. William E. Hunt, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellees.

KEITH, J., delivered the opinion of the court, in which MOORE, J., joined.  BOGGS, J. (pp. 16-17), delivered a separate opinion concurring in part and dissenting in part.

———————

**OPINION**

———————

DAMON J. KEITH, Circuit Judge.

Defendants-Appellants Neil E. Campbell ( "Campbell"), Rickey D. Jones ("Jones"), and Paul Carpenter ("Carpenter") appeal their convictions and sentences entered on guilty pleas for use of a telephone to facilitate a narcotics conspiracy. Campbell raises a single issue in his appeal: whether the district court erred when it held that Campbell did not carry his burden in showing that he was entitled to a downward adjustment pursuant to the "Mitigating Role" provision of United States Sentencing Guidelines ("U.S.S.G.") § 3B1.2. Jones raises two issues on appeal: (1) whether the district court violated his constitutional rights to due process and a jury trial by sentencing him to 120 months in prison, in light of the Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and (2) whether Count One of Jones' indictment, which charged him with conspiracy to distribute marijuana, cocaine, and crack cocaine, was a duplicitous indictment in violation of his Sixth Amendment right to jury unanimity.  Carpenter raises two issues on appeal: (1) whether the district court erred when it held Carpenter responsible for the conspiracy's total distribution of fifteen kilograms of cocaine pursuant to the "Relevant Conduct" provision of U.S.S.G. § 1B1.3; and (2) whether the

district court violated his constitutional rights established in *Apprendi* by sentencing him to 120 months in prison.

For the reasons set forth below, we AFFIRM the district court's order with respect to Campbell. We VACATE Jones' 120-month sentence and REMAND to the district court for resentencing. We also VACATE Carpenter's sentence and REMAND to the district court with the instruction that it make particularized findings on whether the acts of Carpenter's co-conspirators were within the scope of his agreement to jointly undertake in the conspiracy's illegal activities.

## I. FACTUAL AND PROCEDURAL HISTORY

From early 1996 to May 1999, Davon Rodriguez and his brother, Josue, operated a cocaine distribution network in the Butler County area of Ohio. During these three years, the Rodriguez brothers participated in obtaining and reselling approximately fifteen kilograms of cocaine. In April 1999, agents of the Drug Enforcement Agency ("DEA") began a 30-day authorized wiretap of Davon Rodriguez's cellular telephone. Based on these conversations, DEA agents identified Appellants Jones and Carpenter as core members of the Rodriguez cocaine conspiracy. Appellant Campbell was identified as a customer.

A federal grand jury charged all three Appellants with conspiracy to distribute marijuana, cocaine, and crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Moreover, Campbell was charged with two counts of using a telephone to facilitate the commission of a felony, in violation of 21 U.S.C. § 843(b). Jones and Carpenter were charged with two and three telephone counts, respectively.

All three Appellants pled guilty to various charges in exchange for dismissal of the remaining charges. Campbell pled guilty to the two telephone counts, Jones pled guilty to the conspiracy charge, and Carpenter pled guilty to three telephone counts. The district court sentenced Campbell to

twenty-four months in prison, a $1,000 fine, and a one-year term of supervised release. Jones was sentenced to 120 months in prison, a $4,000 fine, and a five-year term of supervised release. Carpenter was sentenced to eighty-seven months in prison, a $3,000 fine, and a one-year term of supervised release. The Appellants each filed timely notices of appeals.

## II. ANALYSIS

### Campbell's Appeal

Campbell argues that the district court erred when it refused to grant him a downward adjustment pursuant to the "Mitigating Role" provision of U.S.S.G. § 3B1.2. Whether a defendant is entitled to a downward departure under § 3B1.2 depends heavily on factual determinations, which we review only for clear error. *United States v. Searan*, 259 F.3d 434, 447 (6th Cir. 2001). For the reasons stated below, we hold that the district court did not commit clear error in refusing to grant Campbell's request for a downward adjustment pursuant to § 3B1.2.

For sentencing purposes, "[t]he salient issue is the role the defendant played in relation to the activity for which the court held him or her accountable." *United States v. Salgado*, 250 F.3d 438, 458 (6th Cir. 2001) (quoting *United States v. Roper*, 135 F.3d 430, 434 (6th Cir.), *cert. denied*, 524 U.S. 920 (1998)). Defendants may be minimal or minor participants in relation to the scope of the conspiracy as a whole, but they are not entitled to a mitigating role reduction if they are held accountable only for the quantities of drugs attributable to them. *United States v. Walton*, 908 F.2d 1289, 1303 (6th Cir.), *cert. denied*, 498 U.S. 990 (1990); *see also United States v. Welch*, 97 F.3d 142, 152 (6th Cir. 1996).

In this case, the district court held Campbell accountable for at least 100, but less than 200 grams of cocaine, which was the "amount of drugs that [Campbell] actually purchased and distributed or used." (Joint Appendix ("J.A.") at 159).

indication that he had otherwise withdrawn, been inactive, or segmented his activities from those of the general conspiracy.

---

## CONCURRING IN PART, DISSENTING IN PART

---

BOGGS, Circuit Judge, concurring in part and dissenting in part. With one exception, I agree with all of the court's excellent opinion in this case. I do not agree with the court's conclusion, at pages 11-14, that we should adopt as a firm rule the Second Circuit's decision in *United States v. Studley*. That case requires that a district court, in determining drug quantities for which a defendant is responsible, make a particularized finding that "the acts were within the scope of the defendant's agreement." I say this not because there may not be some cases in which an agreement is sufficiently limited that it would be appropriate to limit the quantity for which the defendant is responsible, but because such instances will be relatively rare. We are thus simply laying a trap for unwary judges as well as potentially opening the doors to a huge number of merely redundant remands upon appeals now pending or upon *habeas corpus* proceedings.

In general, if there is an agreement, even if implicit, to participate in a drug conspiracy, it is done so without limitation. By selling drugs as part of a larger organization, the "agreement" is simply to help and participate in the larger organization, whose scope may be large, but foreseeable. It is possible, of course, that a person could state explicitly "I agree to carry this particular load of marijuana, but right after that I am going back to Chicago Law School and will never deal with you again." However, such an occurrence would definitely be the exception, not the rule. If the defendant has a plausible case that the agreement was sufficiently limited, it may be that the application of such a rule would make sense in that instance. However, I do not think that a general rule is wise. Carpenter's argument is particularly weak in that his only differentiation from the total amount distributed by the conspiracy was simply that he was heard on a wiretap on only three of the thirty days of that wiretap. There was no

The full amount of cocaine involved in the conspiracy was fifteen kilograms. Because the district court held Campbell accountable only for the quantity of drugs attributable to him, we hold that the district court correctly denied his request for a downward adjustment pursuant to U.S.S.G. § 3B1.2.

Moreover, we have held that downward departures under § 3B1.2 are available only to a party who is "less culpable than most other participants" *and* "substantially less culpable than the average participant." *United States v. Lloyd*, 10 F.3d 1197, 1220 (6th Cir. 1993) (citing U.S.S.G. § 3B1.2 (2001), cmt. n.3 and background). In light of our holding, the district court concluded that:

> While Defendant Campbell may establish that he was less culpable than Davon and Josue Rodriguez, who acted as suppliers of cocaine, he is equally culpable as or more culpable than several of the other non-supplier participants. At best, the Defendant may be less culpable than approximately one-half of the participants in the offenses underlying this case. Accordingly, the Court concludes that *he cannot establish that he is less culpable than most of the other participants in the offenses charged in the indictment in this case.*

(J.A. at 75) (emphasis added). Nothing presented to us on appeal demonstrates that the district court clearly erred when it made the finding that Campbell was not "less culpable than most other participants." Therefore, Campbell fails the first part of the two-prong test that we set out in *Lloyd*, and we are required to affirm the district court's decision not to grant Campbell a downward adjustment pursuant to § 3B1.2.

### *Jones' Appeal*

#### A.  *Apprendi*

Jones first argues that in light of the Supreme Court's decision in *Apprendi*, 530 U.S. 466, the district court violated his constitutional rights to due process and a jury trial by

sentencing him to 120 months in prison. We review constitutional challenges to a sentence *de novo. United States v. Strayhorn*, 250 F.3d 462, 467 (6th Cir. 2001). For the reasons set forth below, we hold that the district court erred in its sentence. We thus vacate the district court's order and remand for re-sentencing.

The issue in *Apprendi* was whether the Fourteenth Amendment's Due Process Clause requires that a factual determination authorizing an increase in the maximum prison sentence for an offense be made by a jury on the basis of proof beyond a reasonable doubt. The Supreme Court held that the Due Process Clause does indeed impose this requirement, and that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi* at 490. Shortly after the Supreme Court's decision, this Court had the opportunity to determine whether the *Apprendi* rule should be expanded to increases in mandatory minimum penalties. In *United States v. Ramirez*, 242 F.3d 348 (2000), we held that *Apprendi* does indeed apply to increases in mandatory minimum sentences and that any factual determination, other than a prior conviction, that increases the penalty from a nonmandatory minimum sentence to a mandatory minimum sentence must be submitted to a jury and proved beyond a reasonable doubt. *Ramirez* at 351.

Applying *Ramirez* to Jones' appeal, we find that the district court's 120-month sentence was inappropriate. Jones pled guilty to one count of conspiracy to distribute an unspecified quantity of marijuana, cocaine, and crack cocaine – a crime that is not accompanied by a mandatory minimum sentence. Although Jones pled guilty to conspiracy to distribute an *unspecified* quantity of narcotics, the district court held him accountable for fifteen kilograms of cocaine, the conspiracy's total distribution amount. Based on this determination, the district court held that Jones was subject to a mandatory

the prescribed statutory maximum for Carpenter convictions was twelve years (144 months). Because Carpenter's eighty-seven-month sentence is less than the 144-month statutory maximum, his *Apprendi* rights were never triggered.

For these reasons, we dismiss Carpenter's *Apprendi* argument.

### III. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's order with respect to Campbell. We VACATE Jones' 120-month sentence and REMAND to the district court for resentencing. We VACATE Carpenter's sentence and REMAND to the district court with the instruction that it make particularized findings on whether the acts of Carpenter's co-conspirators were within the scope of his agreement to undertake jointly in the conspiracy's illegal activities.

We can dispose of this argument both on procedural grounds and on the merits. We have held that "the appellant cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in appellee's brief." *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001) (quoting *United States v. Jerkins*, 871 F.2d 598, 602, n.3 (6th Cir. 1989)). Because Carpenter failed to raise, even perfunctorily, the *Apprendi* issue in his original brief, we find that his argument fails for procedural reasons.

We hold that Carpenter's *Apprendi* argument also fails on the merits. *Apprendi* rights are triggered when the court imposes a sentence that is "beyond the prescribed statutory maximum." *Apprendi* at 490. In order to calculate the prescribed statutory maximum sentence for defendants who have been convicted on multiple counts and who failed to object to the district court making factual determinations that would increase their sentence, we have held that "the Sentencing Guidelines would require that the sentence imposed on one or more of the substantive counts run consecutive to the sentence on the conspiracy count, to the extent necessary to produce a combined sentence equal to the total punishment." *United States v. Page*, 232 F.3d 536, 544 (6th Cir. 2000) (*citing* U.S.S.G. § 5G1.2(d)). Thus, the prescribed statutory maximum for *Apprendi* purposes would be the sum of the statutory maximums for each of the counts upon which the defendant was convicted.

Carpenter's sentence did not exceed the prescribed statutory maximum. Like the defendants in *Page*, Carpenter was convicted on multiple counts and failed to object to the fact that the district court, rather than the jury, held him accountable for the acts of the entire conspiracy. Therefore, Carpenter's prescribed statutory maximum for *Apprendi* purposes was the sum of the statutory maximums for each of the three counts upon which he was convicted. Carpenter was convicted of three counts of using a telephone to facilitate the commission of a felony, in violation of 21 U.S.C. § 843(b). Each count carries a statutory maximum of four years; thus,

minimum sentence of ten years (120 months). *See* 21 U.S.C. § 841(b)(1)(A)(ii).

The district court's decision to attribute the full fifteen kilograms to Jones was a factual determination, other than the fact of a prior conviction, that increased his penalty from a nonmandatory minimum to a mandatory ten-year minimum sentence. Therefore, *Ramirez* requires that the jury, not the district court, should have determined the quantity of narcotics attributable to Jones. By imposing a mandatory minimum sentence without submitting the question of quantity to the jury, the district court violated Jones' due process rights as articulated by *Apprendi* and *Ramirez*. For this reason, we vacate the district court's 120-month sentence and remand for resentencing.

## B. Duplicitous Indictment

Jones also argues that Count One of the grand jury's indictment was a duplicitous indictment in violation of his Sixth Amendment guarantee of jury unanimity because that count joined together three separate offenses: conspiracy to distribute marijuana, conspiracy to distribute cocaine, and conspiracy to distribute crack cocaine. Whether Jones' indictment was duplicitous is a legal question that we review *de novo*. *United States v. Smith*, 39 F.3d 119, 122 (6th Cir. 1994). For the reasons set forth below, we hold that Count One of the grand jury's indictment was not duplicitous.

An indictment is duplicitous if it "joins in a single count two or more distinct and separate offenses." *United States v. Shumpert Hood*, 210 F.3d 660, 662 (6th Cir. 2000) (quoting *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981)). The vice of duplicity is that a "jury may find a defendant guilty on the count without having reached a unanimous verdict on the commission of any particular offense." *Shumpert Hood* at 662. By collapsing separate offenses into a single count, duplicitous indictments "prevent the jury from convicting on one offense and acquitting on

another." *Id.* Therefore, duplicitous indictments implicate the protections of the Sixth Amendment guarantee of jury unanimity. *Id.*

Although we acknowledge the gravity of duplicitous indictments, we hold that Count One of the grand jury's indictment was not a duplicitous indictment. In *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999), we addressed an issue similar to the one raised by Jones: whether a single count that charges a conspiracy to distribute multiple controlled substances constitutes a duplicitous indictment. In *Dale*, the defendant was charged and convicted on one count of conspiracy to distribute both crack cocaine and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. With respect to the defendant's argument that the indictment was duplicitous, we held that:

> It has been clear since *Braverman v. United States*, 317 U.S. 49, 54 (1942), that the allegation, in a single count of conspiracy, of an agreement to commit several crimes is not duplicitous, as conspiracy is itself the crime. *See also United States v. Solimine*, 536 F.2d 703, 711 n.31 (6th Cir. 1976). *A single conspiracy may have as its objective the distribution of two different drugs without rendering it duplicitous. See, e.g., United States v. Clark*, 67 F.3d 1154, 1160 (5th Cir. 1995). . . . The conspiracy count was not duplicitous, and the district court did not err in refusing to sever or dismiss the count.

*Dale*, 178 F.3d at 431-32 (emphasis added). Consequently, we hold that Count One of the grand jury's indictment was not duplicitous and did not violate Jones' Sixth Amendment guarantee of jury unanimity.

Carpenter was aware that the conspiracy was broader than merely the three transactions with which he was involved and that, as a result, the conduct of the conspiracy as a whole was reasonably foreseeable to him. However, the record is void of any indication that the district court specifically addressed the first prong of *Studley* – whether the acts of the co-conspirators were within the scope of Carpenter's agreement. Neither the judgment nor the transcript of the sentencing hearing demonstrate that the district court made particularized findings with respect to the scope of Carpenter's explicit or implicit agreements with his co-conspirators. The government argues that Carpenter's awareness of the broader conspiracy satisfies the first prong of the *Studley* test. We find this argument to be without merit. The mere fact that Carpenter was aware of the scope of the overall operation is not enough to hold him accountable for the activities of the whole operation. *Studley* at 575.

Although we defer to the district court's finding that the co-conspirators' conduct was reasonably foreseeable to Carpenter, we vacate the district court's sentence because the court failed to make particularized findings with respect to the scope of Carpenter's agreement. We remand the case to the district court with the specific instruction that the court determine whether the acts of Carpenter's co-conspirators were within the scope of his agreement to undertake jointly in the conspiracy's illegal activities.

**B.  *Apprendi***

Carpenter argues in his reply brief that by holding him accountable for the acts of the entire conspiracy without making a particularized finding as to whether these acts were within the scope of his agreement to jointly undertake in the conspiracy's illegal activities, the district court violated his constitutional rights that entitle him to a "jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi*, 530 U.S. at 477.

We choose to follow the Second Circuit's interpretation of § 1B1.3(a)(1)(B)[5] and hold that this subsection requires that the district court make *particularized* findings with respect to both the scope of the defendant's agreement *and* the foreseeability of his co-conspirators' conduct before holding the defendant accountable for the scope of the entire conspiracy. Without the requirement that the district court make these two particularized findings, we expose defendants to being sentenced on conspiracies whose activities they did not agree to jointly undertake or could not foresee. Averting sentences based on such conspiracies that are potentially overbroad in scope is one of the specific purposes of § 1B1.3(a)(1)(B). *See* U.S.S.G. § 1B1.3, cmt. n.2 (2001) ("Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant . . . is not necessarily the same as the scope of the entire conspiracy. . . . In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)"). Furthermore, because of the Supreme Court's condemnation of dragnet conspiracies, we choose to adopt the Second Circuit's holding in *Studley*. *Anderson v. United States*, 417 U.S. 211, 224 (1973) (holding that "conspiracies are not to be made out by piling inference upon inference, thus fashioning . . . a dragnet to draw in all substantive crimes").

Applying the *Studley* rule to the facts of our case, we find that the district court did indeed make particularized findings with respect to the foreseeability prong. The court held that

---

[5]The *Studley* rule has also been accepted in the D.C. Circuit, the Eleventh Circuit, and the Fifth Circuit. *See United States v. Anderson*, 39 F.3d 331, 351-52 (D.C. Cir. 1994); *United States v. Bush*, 28 F.3d 1084, 1087 (11th Cir. 1994); *United States v. Evbuomwan*, 992 F.2d 70, 72-74 (5th Cir. 1993).

### *Carpenter's Appeal*

## A.  Quantity of Cocaine Attributable to Carpenter

Carpenter first argues that the district court erred when it held him responsible for the conspiracy's total distribution of fifteen kilograms of cocaine pursuant to the "Relevant Conduct" provision of U.S.S.G. § 1B1.3. A district court's determination of the quantity of drugs used to compute a defendant's sentence is a finding of fact that should be upheld unless clearly erroneous. *United States v. Wilson*, 954 F.2d 374, 376 (6th Cir. 1992). For the reasons stated below, we hold that the district court committed clear error with respect to Carpenter's sentence; therefore, we vacate and remand to the district court for re-sentencing.

In arriving at Carpenter's eighty-seven-month sentence, the district court set his base offense level at 32 pursuant to U.S.S.G. § 2D1.1(c)(4)[1] because the court concluded that Carpenter should be held responsible for the conspiracy's *total* distribution of fifteen kilograms of cocaine.[2] Carpenter objected to this base level, arguing that the district court should have set it at 26 pursuant to § 2D1.1(c)(4)[3] because the quantity of cocaine for which he was *individually* responsible

---

[1]U.S.S.G. § 2D1.1(c)(4) states, in part, that a base offense level of 32 shall be assigned to any person responsible for "at least 5 kg but less than 15 kg of cocaine."

[2]After adjustments, Carpenter's total offense level was set at 27. Combined with his criminal history category of III, his guideline sentence range was 87 to 108 months.

[3]U.S.S.G. § 2D1.1(c)(4) states that a base offense level of 26 shall be assigned to any person responsible for "at least 500 g but less than 2 kg of cocaine."

was 1.5 kilogram.[4]  Carpenter claimed that he should be held accountable only for one-tenth of the total quantity of cocaine purchased by the conspiracy because he pled guilty to offenses occurring on only three of the thirty days of the wiretap.

The district court overruled Carpenter's objection, noting that in the case of jointly undertaken criminal activity, a defendant is accountable for all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity. *See* U.S.S.G. § 1B1.3(a)(1)(B) (2001).  Because the district court determined "that the conduct of the conspiracy as a whole was reasonably foreseeable to [Carpenter] in light of his knowledge of the scope and extent of the conspiracy," the district court concluded that attributing to Carpenter the conspiracy's total distribution of fifteen kilograms of cocaine was proper.  We believe this ruling was clearly erroneous.

According to U.S.S.G. § 1B1.3(a)(1)(B), a base offense level should be determined on the basis of the following:

> [I]n the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the *jointly undertaken criminal activity*, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1)(B) (emphasis added).

---

[4]After adjustments, Carpenter argues that his total offense level should have been set at 23.  Combined with his criminal history category of III, Carpenter argues that his guideline sentence range should have been 57 to 71 months.

Application Note Two of U.S.S.G. § 1B1.3 sets out a two-pronged test that must be satisfied before a defendant is held accountable for the conduct of others: (1) the conduct must be in furtherance of the jointly undertaken criminal activity; and (2) the conduct must be reasonably foreseeable in connection with that criminal activity.  U.S.S.G. § 1B1.3, cmt. n.2.  The Note further states that:

> In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and the objectives embraced by the defendant's agreement).

*Id.* (emphasis added).

In light of this Application Note, the Second Circuit has stated that "in order to hold a defendant accountable for the acts of others [under U.S.S.G. § 1B1.3(a)(1)(B)], a district court must make two particularized findings: (1) that the acts were within the scope of the defendant's agreement; and (2) that they were foreseeable to the defendant." *United States v. Studley*, 47 F.3d 569, 574 (2d Cir. 1995).  The first prong of the *Studley* test serves to differentiate between co-conspirators' varying degrees of culpability. *United States v. Jenkins*, 4 F.3d 1338, 1347 (6th Cir. 1993) (holding that § 1B1.3 "instructs that differentiation between co-conspirators is required").  In order to determine the scope of the defendant's agreement, "the district court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." *Studley* at 574 (quoting U.S.S.G. § 1B1.3, cmt. n.2).  The fact that the defendant is aware of the scope of the overall operation is not enough to satisfy the first prong of the test and therefore, is not enough to hold him accountable for the activities of the whole operation. *Studley* at 575.