**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ronnie LEWIS, Defendant–Appellant.**

No. 03–5015.

United States Court of Appeals,
Sixth Circuit.

Feb. 27, 2004.

---

* Although Judge Ryan was not present for the oral argument in this appeal, he otherwise fully participated in the case and has listened with care to the tape recorded oral arguments.

Tracy L. Berry, Asst. U.S. Attorney, U.S. Attorney's Office, for Memphis, TN, for Plaintiff–Appellee.

Robert C. Brooks, Ronnie Lewis, pro se, Memphis, TN, for Defendant–Appellant.

Before RYAN, MOORE, and ROGERS, Circuit Judges.

RYAN, Circuit Judge.

The defendant, Ronnie Lewis, appeals from the sentence he received after pleading guilty in the federal district court to fraud in connection with the use of unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2), and aiding and abetting the same, in violation of 18 U.S.C. § 2. We must decide whether there was sufficient evidence to support the district court's findings (1) that the total amount of

loss from Lewis's relevant conduct was between $10,000 and $30,000 and (2) that Lewis's relevant conduct involved more than ten but fewer than 50 victims. We conclude that we must **VACATE** the sentence and **REMAND** for more specific findings of fact.

## I.

At Lewis's sentencing hearing, the government introduced a presentence investigation report (PSR), which the district court adopted as its findings of fact, describing Lewis's activities as a member of an illegal conspiracy to defraud. The report identified the victims and detailed the losses attributable to Lewis, either directly or as a result of the conspiracy.

Between April 18 and June 24, 2001, Lewis obtained the names and social security numbers of over 100 people, some of whose identities he used to open fraudulent credit accounts under the names of Morton Dixon, Keith Gramen, Mark Cline, and Michael Lyon. According to the PSR, Lewis used these accounts to obtain merchandise valued at $12,467.07 from four different retailers: Wal–Mart, J.C. Penney, Target, and Proffit's.

In addition to these losses, Lewis's codefendant, Ralph Johnson, fraudulently used the identifies of James McCormick, Mike Moore, and Jeffrey Silverman to obtain merchandise valued at $8,678.02. The district court concluded that, under the relevant conduct provisions of the U.S. Sentencing Guidelines, Johnson's actions were attributable to Lewis because they were jointly undertaken or were reasonably foreseeable in furtherance of jointly undertaken criminal activity. Accordingly, the district court was satisfied that the government had met its burden of showing that the aggregate loss attributable to Lewis was greater than $10,000. Additionally, the court was satisfied that there were more than ten victims because Lewis, or his coconspirator, Johnson, had fraudulently used the identities of seven individuals to obtain merchandise from four merchants, resulting in a total of eleven "victims."

Because the loss attributable to Lewis was greater than $10,000, the district court imposed a four-level sentence enhancement under U.S.S.G. § 2B1.1(b)(1)(C). An additional two-level enhancement was imposed under U.S.S.G. § 2B1.1(b)(2)(A)(i), because the number of Lewis's victims was greater than ten.

In his written objections to the PSR. Lewis complained that the loss calculation and the calculation of the number of victims were "overinflated" because there was insufficient evidence that Lewis was responsible for losses of $10,000 or more or that the victims of his crimes numbered ten or more. At the sentencing hearing, Lewis alleged that his codefendant, Johnson, and a previously unknown individual named James Thomas, were directly responsible for most of the losses described in the PSR. Lewis then claimed that he was unaware of Johnson's and Thomas's conduct, which, he maintains, should not be used as a factor in determining his sentence. On appeal, Lewis continues to dispute the district court's factual findings as to the scope of the conspiracy. He claims there is insufficient evidence to support the sentence enhancements based on jointly undertaken criminal activity, and that the district court failed to make particularized findings of fact with respect both to the scope of the conspiracy and to the foreseeability of the conduct of Lewis's coconspirators.

## II.

"This court reviews the district court's application of the United States Sentencing Guidelines de novo and the district court's findings of fact at sentencing for

clear error." *United States v. Tocco*, 306 F.3d 279, 284 (6th Cir.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 2573, 156 L.Ed.2d 602 (2003). We also review the "district court's finding that the criminal acts of others in a jointly undertaken criminal activity are reasonably foreseeable and in furtherance of the jointly undertaken criminal activity ... for clear error." *Id.*

### III.

Lewis challenges the district court's calculation of the loss properly attributable to him for sentencing purposes and the consequent imposition of a four-level enhancement.

In calculating a defendant's base offense level under the sentencing guidelines, the court must consider all relevant conduct, which includes all of the defendant's acts and omissions, as well as those he "aided, abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 1B1.3(a)(1)(A). Relevant conduct findings must be based on reliable information and a preponderance of the evidence. U.S.S.G. § 6A1.3, comment.

■ If the defendant is engaged in a "jointly undertaken criminal activity," relevant conduct also includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). When the defendant's sentence is based on jointly undertaken criminal activity, the district court must

> make *particularized* findings with respect to both the scope of the defendant's agreement *and* the foreseeability of his co-conspirators' conduct before holding the defendant accountable for the scope of the entire conspiracy.

*United States v. Campbell*, 279 F.3d 392, 400 (6th Cir.2002). In *Campbell*, we explained that Application Note Two of U.S.S.G. § 1B1.3 requires district courts to

" 'make two particularized findings: (1) that the acts were within the scope of the defendant's agreement; and (2) that they were foreseeable to the defendant.' " *Id.* (quoting *United States v. Studley*, 47 F.3d 569, 574 (2d Cir.1995)). In *United States v. Orlando*, 281 F.3d 586, 600–01 (6th Cir. 2002), we specified that generalized conclusions, without reference to particular evidence, are not sufficient to satisfy this obligation because they do not provide the opportunity for meaningful review. In this case, the district court's generalized finding, that it is foreseeable in a widespread identity theft conspiracy that other individuals would use the same identities, did not meet the requirements imposed by *Campbell* and *Orlando*. Moreover, findings regarding the general scope of a conspiracy are not determinative of what a particular defendant agreed to and could have reasonably foreseen. Therefore, we must remand to the district court with instructions to make particularized findings regarding the scope of Lewis's agreement and the reasonable foreseeability of his coconspirators' conduct.

■ We also are unable to determine whether there is sufficient evidence to support the district court's conclusion that the total amount of loss attributable to Lewis as a result of the jointly undertaken criminal activity with his coconspirators is between $10,000 and $30,000. Although the PSR describes in great detail the amount of the losses allegedly attributable to Lewis and his coconspirators. Lewis disputes these calculations. Because Lewis made a timely written objection to the evidentiary basis for the PSR's loss calculations, the district court was obligated to make specific findings of fact to resolve the dispute and was not free to simply adopt the relevant portions of the PSR as its findings of fact. We must remand to the district court with instructions to "rule on the dispute or determine that a ruling is un-

necessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed.R.Crim.P. 32(i)(3)(B).

## IV.

■ Lewis's next assignment of error is that the district court miscalculated the total number of victims. The district court enhanced Lewis's offense level by two, because the crime involved ten or more victims. But Lewis argues that this number is "overinflated," because it includes individuals who were not actually "victim[s]" as that term is defined in U.S.S.G. § 2B1.1, comment. (n.3(A)(ii)).

For economic crimes, the base offense level is increased by two if the crime involved more than ten but fewer than 50 victims. U.S.S.G. § 2B1.1(b)(2)(A)(i). A "victim" is "any person who sustained any part of the actual loss." U.S.S.G. § 2B1.1, comment. (n.3(A)(ii)). "Actual loss" is "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1, comment. (n.2(A)(i)). "Reasonably foreseeable pecuniary harm" is "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." U.S.S.G. § 2B1.1, comment. (n.2(A)(iv)). A finding that the victims of the offense numbered more than ten must be based on reliable information and a preponderance of the evidence. U.S.S.G. § 6A1.3, comment.

Based on the record before us, we are unable to determine whether there is sufficient evidence to support the district court's conclusion that the conduct attributable to Lewis involved more than ten victims. Although the PSR identifies, by name, four corporate merchants that suffered pecuniary losses as a result of Lewis's crimes and the seven individuals whose identities were stolen, we have no way of knowing whether the seven individuals suffered "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." U.S.S.G. § 2B1.1, comment. (n.2(A)(iv)).

Assuming that a victim of identity theft suffers "actual loss," as that term is defined in U.S.S.G. § 2B1.1, comment. (n.2(A)(i)), that is, "pecuniary harm," when he expends effort to protect his credit history, the only evidence in the PSR that an individual victim in this case sustained such harm is the statement of a single victim, Keith Gramen. While the evidentiary standard at a sentencing hearing is low, it is not nonexistent. The government's mere allegation in paragraph 45 of the PSR that seven individuals were victims of Lewis's conduct is not sufficient proof that seven individuals suffered "actual loss" within the meaning of the guidelines' language.

Contrary to the government's assertion, Lewis's failure to object in writing to paragraph 45 of the PSR does not prevent him from challenging the sentence enhancement. Lewis preserved his objection to the calculation of the number of victims when he objected in writing to paragraph 54 of the PSR, which states that the number of victims is greater than ten. Lewis's precise objection was: "There is no evidence that the Defendant Lewis was associated with more than ten victims." We believe that this wording, while imprecise, was sufficient to preserve Lewis's objection that the individuals listed in the PSR were not actually victims.

## V.

For the foregoing reasons, we conclude that the district court's failure to comply with the provisions of Fed.R.Crim.P. 32 and with Application Note Two of U.S.S.G. § 1B1.3 requires that Lewis's sentence be

VACATED and the case be **REMANDED** for resentencing.