UNITED STATES, Plaintiff–Appellee,

v.

Sheree KELSO, Defendant–Appellant.

No. 03–5803.

United States Court of Appeals,
Sixth Circuit.

April 29, 2004.

M. Neil Smith, Asst. U.S. Attorney, Greenville, TN, for Plaintiff–Appellee.

Michael J. Stengel, Stengel Law Office, Memphis, TN, for Defendant–Appellant.

Sheree V. Kelso, Dandridge, TN, pro se.

Before: MOORE, SUTTON and FRIEDMAN,* Circuit Judges.

SUTTON, Circuit Judge.

Sheree Kelso appeals the sentence imposed upon her after she pleaded guilty to conspiracy under 18 U.S.C. § 371. She argues that the district court erred in re-

---

* Daniel M. Friedman, Circuit Judge for the   Federal Circuit, sitting by designation.

fusing to reduce her base offense level for her "minor" or "minimal" role in the conspiracy. Because the district court applied the wrong legal standard and left pertinent factual matters unresolved, we vacate the sentence and remand so that the district court may make any necessary factual determinations in view of the correct legal standard.

## I.

In October 2002, Kelso and three co-defendants–Edward and Wanda Vaughan (Kelso's parents) and Terry Vaughan (Kelso's brother)–each pleaded guilty of conspiring to engage in a variety of fraudulent activities. The conspiracy involved Raley–Vaughan Motor Company, an automobile dealership owned and operated by Edward and Wanda Vaughan. Terry Vaughan was the dealership's vice president, and Kelso was an employee who performed accounting, sales and other duties.

One prong of the conspiracy involved a scheme to defraud General Motors Acceptance Corporation (GMAC) by fraudulently manipulating the "floor plan" financing arrangement that Raley–Vaughan had with GMAC. The defendants sold vehicles that they held in trust for GMAC. then concealed the sales in order to avoid or delay paying GMAC. To conceal the sales, the defendants arranged to have previously sold cars returned to the dealership during GMAC audits, delayed registering vehicles and created false bills of sale.

A second prong of the conspiracy involved a "loan kite"–obtaining false loans and using the proceeds to pay off earlier false loans before their falsity was discovered. To conceal the fraud from the lenders, the conspirators made monthly payments on the loans until some event forced them to pay off the loans (usually a demand by a lender for a certificate of title to the vehicle purportedly securing the loan). The false loans charged in the indictment involved 12 customers and 26 loans.

A third prong of the conspiracy involved a traditional "check kite"–artificially and fraudulently inflating the numerical balances in checking accounts by drawing upon one account with insufficient legitimate funds to give the appearance of funding another account with insufficient legitimate funds.

After the defendants pleaded guilty, the probation officer prepared a presentence investigation report for each of them. Kelso's report detailed several dozen overt acts committed by the defendants in furtherance of the conspiracy, but specified Kelso (as opposed to the other parties) as the party taking the action in only a few instances. The Government pointed to four specific acts: (1) in July 1996, Kelso "helped her mother make a payment on a fraudulently obtained loan" in a false name to deceive First Union National Bank as to the true nature of the loan: (2) in January 1997, Kelso "caused-to be made" another payment in a false name on a fraudulently obtained loan: (3) Kelso "helped prepare title documents" to conceal a false loan in the name of Katherine Killian: and (4) Kelso "helped prepare ... checks" for payments to conceal the fraudulent nature of a loan obtained in the name of Brian Gilkey. Gov't Br. at 5.

In calculating Kelso's sentence, the report held Kelso responsible for the entire amount of losses caused by the conspiracy–$1.026,017.18. That amount was significant because, under the Guidelines, a defendant's offense level must be increased by 16 levels if the loss exceeded $1,000,000 (as opposed to, say. 10 levels for losses that exceeded $120,000). U.S.S.G. § 2B1.1(b)(1). The report included no reduction for Kelso's role in the offense.

Kelso objected to both of these determinations. First, she claimed that she should not be held responsible for the entire amount of losses caused by the conspiracy, though she offered no specifics on that point. Second, she claimed that she was entitled to an adjustment based on her limited role in the conspiracy, asserting that: (1) she "was not an owner or officer in the Raley–Vaughan Motor Company"; (2) "[s]he did not initiate any of the various schemes alleged in the indictment"; (3) she did not "sign loan documents or checks [or] ... have authority to do so"; (4) she committed only "minor or minimal" acts in furtherance of the conspiracy as "compared to the size of the conspiracy and the acts of the other conspirators"; (5) she acted only "at the direction of ... the other co-conspirators"; and (6) "she would have derived no financial benefit from [the conspiracy's] success" had it succeeded. JA 180–81.

The Government responded to Kelso's (and her co-conspirators') objections, defending the report's calculation of the total loss and arguing that Kelso was not a "minor participant." In particular, the Government argued that Kelso was not a minor participant because she and her co-defendants "told the probation officer that no one family member was an organizer or leader in the criminal conduct; rather, they stated they were all involved in the conduct." Gov't Br. at 7–8. The Government also moved for a downward departure for Kelso and her parents because they had cooperated in the case against Terry Vaughan.

The district court issued a written order granting the Government's downward-departure motion for the three cooperating defendants but overruling all of the defendants' objections. The court gave no reason for overruling Kelso's objection to holding her accountable for the entire loss caused by the conspiracy. As for whether Kelso deserved a "minor participant" reduction, the following was the entirety of the court's determination:

> [Kelso] contends that she should receive a reduction in her offense level as a "minor participant." However Ms. Kelso is reported to have told the probation officer that no one family member was an organizer or leader of the criminal conduct–they all were involved.

JA 194–95.

Kelso then notified the court that she wished to offer evidence at her sentencing hearing to support her claim that she was a "minor participant." The court granted the request, and an evidentiary hearing was held.

Four witnesses testified at the hearing: Terry Vaughan. Edward Vaughan, Kelso and the probation officer. Terry testified that he and his parents were responsible for making all of the financial decisions that led to the indictment, that Kelso never made any decisions, that the three did not actively involve Kelso in making decisions, that Kelso was not in a position to question the decisions that were made and that Kelso played "a support role at best." JA 214–15. Indeed, Terry testified that Kelso (unlike the others) never borrowed money or met with anyone about securing credit, lacked authority to act on behalf of Raley–Vaughan, and committed no acts in furtherance of the conspiracy that were not at the direction of the other three and that could not have been performed by any number of others. JA 215–16. Edward and then Kelso herself testified to the same effect.

Testifying on the Government's behalf, the probation officer recalled that in her separate interviews with the four conspirators, "[t]hey basically stated that each one of them [was] part of the operation; that it was a very close family operation; [and]

that each individual did whatever it took to keep the business going from day to day." JA 245. Her "perception" was "that they were all equal roles." JA 246. She also testified that none of the four defendants indicated to her in the interviews that they were directed by others or that they directed others. JA 246. Lastly, on cross-examination, the probation officer testified that she uncovered no other overt acts attributable to Kelso other than the few discussed in her report. JA 248–49.

The court's ruling immediately followed. In its entirety, the court said:

Okay. All right. I guess the first thing, all the objections that you all have made have been–were overruled by us, and by me; and Ms. Vaughan [Kelso], we've given you another opportunity because you wanted it, and I'm going to adhere to the same thing I decided before that was overruled, that you asked to be overruled, and I don't think it needs to be overruled.

JA 249. The court then imposed a sentence of 22 months' imprisonment, to be followed by three years of supervised release, and ordered Kelso to pay restitution of $570,225.22. This timely appeal followed.

## II.

■ Under U.S.S.G. § 3B1.2, a district court may reduce a defendant's base offense level by four points if the defendant was merely a "minimal participant," two points if the defendant was a "minor participant," and three points if the defendant's participation falls somewhere between "minimal" and "minor." To qualify for any reduction under § 3B1.2–whether on the basis of a "minimal" role, a "minor" role or something in between–a defendant must be both " 'less culpable than most other participants' *and* 'substantially less culpable than the average participant.' "

*United States v. Campbell*, 279 F.3d 392, 396 (6th Cir.2002) (quoting *United States v. Lloyd*, 10 F.3d 1197, 1220 (6th Cir. 1993)). The comment to this Guideline defines a "minimal participant" as someone who is "plainly among the least culpable of those involved in the conduct of a group," such as someone who "lack[s] knowledge or understanding of the scope and structure of the enterprise and of the activities of others." U.S.S.G. § 3B1.2 cmt. n. 4. A "minor participant," in partial contrast, is someone who "is less culpable than most other participants, but whose role could not be described as minimal." *Id.* § 3B1.2 cmt. n. 5.

In determining whether a defendant's role was "minimal," "minor," or something more, a court must examine "the role the defendant played in relation to the activity for which the court held him or her accountable." *United States v. Roper*, 135 F.3d 430, 434 (6th Cir.1998). In other words, if a sentencing court holds a defendant accountable for less than the overall conspiracy in determining the defendant's base offense level, the court may not consider the defendant's role relative to the overall conspiracy for purposes of § 3B1.2, only her role relative to the activity for which she is held accountable. *See id.; United States v. Roberts*, 223 F.3d 377, 380 (6th Cir.2000). Conversely, a court that holds a defendant accountable for a larger conspiracy (as the district court did here) should consider the defendant's role relative to the larger conspiracy for purposes of § 3B1.2. Kelso bore the burden of proving her entitlement to a reduction by a preponderance of the evidence. *Id.* at 379.

In measuring the district court's determination against these criteria, it is first appropriate to identify precisely what that determination was. After allowing Kelso to introduce evidence, the court overruled "all [of] the objections" that she made and

"adhere[d] to" its earlier decision. In issuing a blanket rejection of "all the objections," the court made no factual determinations and offered no explanation of its reasoning, which leaves us with the order that the court issued before hearing the evidence. We can only assume that, by "adher[ing]" to its earlier decision, the court was overruling Kelso's minor-participant objection for the reason stated in that decision.

■ The earlier order, however, contains a significant legal flaw. In rejecting Kelso's motion for a reduction based on her role in the conspiracy, the court said that Kelso "is reported to have told the probation officer that no one family member was an organizer or leader of the criminal conduct" and said that "they all were involved." This analysis applies the wrong legal test. Assume, for the sake of argument, that Kelso had a conspicuously modest involvement in the conspiracy. Assume that the other three conspirators, though conspicuously involved in the conspiracy, were each equally involved. Even though in this hypothetical Kelso would be "less culpable than most other participants" and "substantially less culpable than the average participant," the district court's rule would deny her relief because (1) she was involved (she was convicted, so she had to have been involved) and (2) there was no one member of the conspiracy that was the organizer or leader. Such a rule is inconsistent with the Guideline and this Court's precedent, and indeed incorrectly suggests that in order for one participant in a conspiracy to receive a reduction for a minimal or minor role, another participant in the conspiracy must be eligible for an enhancement for a leadership role. *See* U.S.S.G. § 3B1.2; *Campbell,* 279 F.3d at 396 (a defendant must be "less culpable than most other participants" and "substantially less culpable

than the average participant" to qualify for a "minor participant" adjustment) (quotation omitted).

Since the evidence before the district court may support a role reduction for Kelso and since the district court applied the wrong test and made no relevant factual findings, the district court should determine in the first instance whether Kelso was a minor or minimal participant. *See* Fed.R.Crim.P. 32(i)(3)(B) ("At sentencing, the court ... must–for any disputed portion of the presentence report or other controverted matter–rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."); *United States v. Nelson,* 356 F.3d 719, 722 (6th Cir.2004) (Rule 32(i)(3)(B) "ensure[s] that sentencing is based on reliable facts found by the court itself after deliberation, and thus, the district court cannot summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence.") (quotations omitted).

### III.

For the foregoing reasons, we vacate Kelso's sentence and remand to the district court for resentencing consistent with this opinion.