**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0900n.06
Filed: November 15, 2005

**Nos. 04-5677/04-5678/04-5703**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| WALTER WILLIAMS (04-5677); ALLEN YOUNG | ) | **O P I N I O N** |
| (04-5678); and MICHAEL SMITH (04-5703), | ) | |
| | ) | |
| **Defendants-Appellants.** | ) | |

**BEFORE: BOGGS, Chief Judge; NORRIS and COOK, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** Defendants Walter Williams, Allen Young, and
Michael Smith appeal their convictions and sentences in connection with a drug-trafficking
conspiracy. All three defendants were convicted of conspiracy to distribute and possess with intent
to distribute fifty grams or more of a substance containing cocaine base in violation of 21 U.S.C. §
846. Young was also convicted of aiding and abetting in the possession of firearms in furtherance
of a drug trafficking offense. In addition to conspiracy, Smith was convicted of possession and
discharge of a firearm during and in relation to a drug trafficking offense.

On appeal, Williams argues that the district court should not have admitted allegedly
prejudicial gang-related evidence. Young asserts that the district court should have disclosed the
identities of government informants and witnesses, and that it should have excluded mention of his

alias from the indictment and the trial. Smith contends that there was insufficient evidence to convict him. With respect to sentencing, the government concedes that we must remand all three sentences for resentencing pursuant to *United States v. Booker*, 125 S. Ct. 738 (2005).

We affirm the convictions but remand for resentencing.

**I**.

Defendants were arrested in 2002 for their participation in a crack cocaine conspiracy linked to the Knoxville branch of the Vice Lords gang. The government launched an investigation in 2001 after residents of a housing project in Knoxville complained about the gang. After a former member turned informant, agents obtained authorization to set up video surveillance of the gang's regular meeting place. Although Williams did not attend meetings because he was incarcerated, Young and Smith appeared in the resulting videotapes. In the course of its investigation, the government executed search warrants at the residences of both Young and Edward Howell, another member of the conspiracy. Drug trafficking equipment, cash, and firearms were recovered during these searches.

Numerous arrests resulted from these investigations. Pursuant to plea agreements, several defendants testified at trial. Jahmal Tory, who lived with Young, testified that he, Williams, John Cotner, and Vincent Brown founded the Knoxville branch of the Vice Lords in 1999 and sought to secure a crack cocaine monopoly in the area. As the gang grew, most members supported themselves by selling crack. Gang members on occasion pooled their money in order to purchase large quantities of crack from suppliers. Members attempted to buy cocaine from each other as

much as possible to "keep the money in the Nation." The gang collected a stash of firearms, at least some of which were stored at Smith's residence.

Among other things, the gang's weekly meetings entailed the collection of dues. The undercover videotapes depicted gang members identifying themselves at meetings by their street aliases and their rank in the gang. They also discussed drug trafficking and acquisition of firearms. On one videotape, Smith suggested a new "pat down" security measure for the meeting place.

In recorded telephone conversations, Young and Williams talked about expanding their drug trafficking to other housing projects. Videotapes also showed that Tory asked Williams to sell drugs in North Carolina, and that members made an initial, failed attempt to do so.

Witnesses described four violent drug-related incidents involving the gang. First, Smith shot Terry Moore when gang members tried to collect a drug debt. Second, gang member Jedaryll Chandler attempted to shoot Brian Whitman for not paying his gang "dues." Third, Williams and Chandler committed an armed robbery of a cocaine supplier. Fourth, Edwin Hyman, and Young, tried to shoot David Benton for acting as an informant while Smith served as the "look out."

After Smith was jailed, a fellow inmate reported that Smith attempted to enlist the inmate to go find Moore and convince Moore to lie about the shooting at trial. Another inmate testified that Smith told him to testify that Smith did not sell drugs.

**II.**

A. *Williams' Appeal of His Conviction*

Williams challenges his conviction for conspiracy on the basis that the district court admitted unfairly prejudicial evidence of his affiliation with the Vice Lords gang. He admits that he was the leader of the gang but denies that he was part of a drug-trafficking conspiracy.

Williams' challenge pertains to the district court's ruling under Federal Rule of Evidence 403, which states in part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403. We review such rulings for abuse of discretion, taking a "maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect . . . ." *United States v. Gibbs*, 182 F.3d 408, 429 (6th Cir. 1999) (quoting *United States v. Sassanelli*, 118 F.3d 495, 498 (6th Cir. 1997)). Even if the evidence had an unfairly prejudicial effect, reversal is not warranted if the error was harmless. Fed. R. Crim. P. 52(a).

Although prejudicial to a defendant, evidence of gang affiliation can be sufficiently probative to survive a Rule 403 challenge. *Gibbs*, 182 at 430. As in *Gibbs*, the government in the instant case sought to introduce evidence of Williams' gang membership based on the theory that all gang members were engaged in the drug-trafficking conspiracy. Although it remained the government's burden to prove that membership in the Vice Lords was synonymous with membership in the conspiracy, we detect no abuse of discretion in the district court's decision to permit the introduction of the challenge evidence for this limited purpose, particularly in light of the fact that it gave the jury an instruction to that effect.

B. *Young's Appeal of His Convictions*

1. *Disclosure of Confidential Informants*

Young argues that the district court erred by denying his pretrial request for the disclosure of the identities of confidential informants that the government relied upon in its affidavit supporting a request for authorization of electronic surveillance.

Because defendant did not renew his objection at trial, the standard of review is plain error. *See United States v. Kelly*, 204 F.3d 652, 655 (6th Cir. 2000) (motion in limine is insufficient to preserve objection absent contemporaneous objection); Fed. R. Crim. P. 52(b). Plain error involves a legal error that is obvious and that affects substantial rights. *United States v. Olano*, 507 U.S. 725, 732-34 (1993). Defendant has the burden of showing prejudice. *Id.* at 734.

When deciding whether a defendant is entitled to disclosure of the identities of confidential informants, the trial court must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense." *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992) (quoting *Roviaro v. United States*, 353 U.S. 53, 62 (1957)). The defendant must demonstrate that disclosure is essential to a fair trial. *Id.* While Young raises the possibility of having private detectives investigate the informants, he fails to demonstrate how not disclosing the informants affected the outcome of the proceedings. Accordingly, we decline to reverse the denial of disclosure of the identities of the confidential informants.

2. *Prejudicial Use of Young's Alias*

Young asserts that the district court erred when it denied a pretrial motion to strike his "Capone" alias from the indictment and to exclude mention of the alias during trial. According to Young, he was identified at trial by twenty-six witnesses, and of those, three referred to him only by his street name, and just three co-defendants referred to him by both his street name and his given

name.  The alias is also used in the undercover videotapes of the gang's meetings, which the government introduced at trial.  As mentioned earlier, each meeting began with a ritual in which each member identified himself by his alias and his rank in the gang.

A motion to strike surplusage from the indictment pursuant to Federal Rule of Criminal Procedure 7(d) is subject to the district court's discretion.  *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974) (citing *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962)).  With respect to the introduction of the alias at trial, the district court's ruling under Rule 403 is likewise reviewed for abuse of discretion.

As a general rule, we disfavor the use of aliases in indictments and at trial, and permit their use only when they are relevant to identify the defendant.  *United States v. Wilkerson*, 456 F.2d 57, 59 (6th Cir. 1972).  In this case, the district court found that Young's alias was relevant because the conspirators referred to each other by aliases, aliases appeared in videotapes that the government used at trial, and some witnesses knew the defendants by their aliases.

Young argues that the government did not need to use his alias to connect him to the crime since so many witnesses identified him by his given name.  While it is true that "use of an alias in an indictment and in evidence is permissible if it is necessary to connect the defendants with the acts charged," *United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001) (quoting *United States v. Hines*, 955 F.2d 1449, 1454 (11th Cir. 1992)), as long as the alias assists in identifying the defendant, it is relevant and admissible.  Here, the government introduced undercover videotapes of gang meetings in which members identified themselves by their aliases.  Moreover, some witnesses knew defendant only by his alias.  Because reference to the alias was relevant to identify

defendant, the only question is whether the reiteration of the alias was unduly prejudicial.  Our review of the trial transcript convinces us that the government did not emphasize the alias in a way that would predispose the jury against Young or suggest improper character inferences.  *See Wilkerson*, 456 F.2d at 59 (finding non-prejudicial error when prosecutor inflamed jury by commenting in closing argument that people with nothing to hide do not use aliases).  In sum, the district court did not abuse its discretion with respect to this ruling.

C. *Smith's Appeal of His Conviction*

Smith contends that the evidence was insufficient to support his conspiracy and firearm convictions.  He concedes that he was part of a gang that distributed drugs, that he bought a small quantity of cocaine from the gang, and that he was caught on videotape discussing "pat down" procedures at the gang's headquarters.  But he asserts that the evidence was insufficient to show that, even if he did sell some drugs, the sales were part of the drug-trafficking conspiracy.  He also denies that he was involved in the discharge of a firearm, or that the firearm was discharged in connection with drug trafficking.

In reviewing the sufficiency of the evidence, the court determines whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  To be found guilty on a charge of conspiracy to engage in drug trafficking, a defendant must be aware of the object of the conspiracy and voluntarily associate himself with its purpose.  *United States v. Harris*, 397 F.3d 404, 414 (6th Cir. 2005).

> Mere presence is not enough to connect a person to a conspiracy. However, once the existence of a conspiracy was established, only slight evidence was needed to connect [defendant] to it, if there was sufficient evidence to establish the connection beyond a reasonable doubt.

*United States v. Braggs*, 23 F.3d 1047, 1051 (6th Cir. 1994); *see also Gibbs*, 182 F.3d at 422 (citing *United States v. Pearce*, 912 F.2d 159, 162 (6th Cir. 1990)).

In our view, the evidence that defendant shot Terry Moore as part of an effort to collect a drug debt is sufficient to sustain both convictions. Two witnesses testified that Smith, Howell, and Brown discussed their intention to collect a debt from a drug-trafficking transaction on their way to meeting Moore. Thus, there was evidence that defendant was aware of the drug-trafficking conspiracy and voluntarily associated himself with the drug-trafficking objective. Although defendant questions the credibility of the witnesses, that credibility determination is left to the jury. Moreover, in addition to the facts admitted by defendant, there was also evidence that he served as the "look out" in a failed "hit" upon Benton for being an informant, and that he instructed a fellow inmate not to reveal that the shooting of Terry Moore was drug-related. In short, a rational trier of fact could have found beyond a reasonable doubt that defendant conspired to distribute fifty or more grams of cocaine.

The evidence that defendant shot Moore supports the firearm charge as well. In order to be found guilty of the firearm charge, the weapon must facilitate or have the potential to facilitate a drug-trafficking offense. *Smith v. United States,* 508 U.S. 223, 238 (1993) (citing *United States v. Stewart*, 779 F.2d 538, 539 (9th Cir. 1985)); *United States v. Warwick*, 167 F.3d 965, 971 (6th Cir. 1999). Since testimony showed that defendant shot Moore while collecting a debt for drug sales,

the use of a weapon facilitated drug trafficking.  The evidence is sufficient to sustain the jury's

verdict.

### III.

The government concedes that we must remand the sentences of all three defendants for

resentencing in light of the new "advisory" guidelines system established in *Booker*.  Although

Smith asks us to review the district court's determinations concerning drug quantity and extent of

defendant's participation in the conspiracy, we will allow the district court the opportunity to

reconsider its decisions with respect to these provisions on remand.

### IV.

The convictions of all three defendants are **affirmed**.  We **remand** for resentencing as

consistent with *Booker*.