NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0548n.06
Filed: August 7, 2007

## Nos. 06-5572 & 06-5703

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL SMITH, also known as New York, | ) | |
| | ) | |
| | ) | |
| Defendant-Appellant. (06-5572) | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| _____ | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF TENNESSEE |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALLEN YOUNG, also known as Capone, also known as War Chief, | ) | |
| | ) | |
| Defendant-Appellant. (06-5703) | ) | |

Before: SILER and COOK, Circuit Judges; and REEVES, District Judge.[*]

COOK, Circuit Judge. Michael Smith and Allen Young were members of the Vice Lords

crack gang in Knoxville, Tennessee. Smith was known as "New York" and Young as "Capone" and

_____

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

"War Chief." A jury convicted Smith and Young of conspiracy to distribute and possess with intent

to distribute fifty grams or more of a mixture or substance containing crack cocaine in violation of

21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). The jury also convicted Young of aiding and

abetting the possession of firearms in furtherance of a drug trafficking offense and Smith of

possession and discharge of a firearm during and in relation to a drug trafficking offense. In a

previous appeal, this court affirmed their convictions and remanded for resentencing under *Booker*.

*United States v. Williams*, 158 F. App'x 651 (6th Cir. 2005). The district court sentenced Young to

a within-Guidelines sentence of 420 months and Smith to a below-Guidelines sentence of 320

months. We affirm.


I.


As we have considered this case previously, we rely on the factual background from the

defendants' first appeal:


> Defendants were arrested in 2002 for their participation in a crack cocaine conspiracy
> linked to the Knoxville branch of the Vice Lords gang. The government launched
> an investigation in 2001 after residents of a housing project in Knoxville complained
> about the gang. After a former member turned informant, agents obtained
> authorization to set up video surveillance of the gang's regular meeting place.
> Although Williams did not attend meetings because he was incarcerated, Young and
> Smith appeared in the resulting videotapes. In the course of its investigation, the
> government executed search warrants at the residences of both Young and Edward
> Howell, another member of the conspiracy. Drug trafficking equipment, cash, and
> firearms were recovered during these searches.
>
> Numerous arrests resulted from these investigations. Pursuant to plea agreements,
> several defendants testified at trial. Jahmal Tory, who lived with Young, testified

that he, Williams, John Cotner, and Vincent Brown founded the Knoxville branch of the Vice Lords in 1999 and sought to secure a crack cocaine monopoly in the area. As the gang grew, most members supported themselves by selling crack. Gang members on occasion pooled their money in order to purchase large quantities of crack from suppliers. Members attempted to buy cocaine from each other as much as possible to "keep the money in the Nation." The gang collected a stash of firearms, at least some of which were stored at Smith's residence.

Among other things, the gang's weekly meetings entailed the collection of dues. The undercover videotapes depicted gang members identifying themselves at meetings by their street aliases and their rank in the gang. They also discussed drug trafficking and acquisition of firearms. On one videotape, Smith suggested a new "pat down" security measure for the meeting place.

In recorded telephone conversations, Young and Williams talked about expanding their drug trafficking to other housing projects. Videotapes also showed that Tory asked Williams to sell drugs in North Carolina, and that members made an initial, failed attempt to do so.

Witnesses described four violent drug-related incidents involving the gang. First, Smith shot Terry Moore when gang members tried to collect a drug debt. Second, gang member Jedaryll Chandler attempted to shoot Brian Whitman for not paying his gang "dues." Third, Williams and Chandler committed an armed robbery of a cocaine supplier. Fourth, Edwin Hyman, and Young, tried to shoot David Benton for acting as an informant while Smith served as the "look out."

After Smith was jailed, a fellow inmate reported that Smith attempted to enlist the inmate to go find Moore and convince Moore to lie about the shooting at trial. Another inmate testified that Smith told him to testify that Smith did not sell drugs.

*Williams*, 158 F. App'x at 652-53.

On remand, the district court reconsidered its sentencing decision according to *Booker*. Young qualified for a base level of 38 and criminal history category of VI. The Guidelines suggested a sentence of 360 months to life on the drug conspiracy conviction; Young also faced a mandatory minimum term of 60 months for his 18 U.S.C. § 924(c) conviction, to be served consecutively. The

district court found that the conspiracy was responsible for selling at least 1.5 kilograms of crack, and attributed that amount to Young in calculating his Guidelines range. The court then noted its consideration of the 18 U.S.C. § 3553(a) factors and sentenced Young to 420 months.

Smith qualified for an offense level of 40 and a criminal history category of I. As with Young, the district court attributed 1.5 kilograms to Smith, explaining that Smith's involvement in the Vice Lords between March 2001 and July 2002 sufficed to hold him responsible for this quantity. Given this quantity, the Guidelines suggested a sentence between 292 and 365 months for his conspiracy conviction. Smith's conviction for discharging a firearm in relation to a drug trafficking offense required a statutory mandatory consecutive sentence of 120 months. After rejecting Smith's contention that the court incorrectly attributed 1.5 kilograms to him, and rejecting his request for a Minor Role offense-level reduction, the court considered the application of the § 3553(a) factors. Because of Smith's young age, lack of criminal history, willingness to admit his mistakes, and desire to avoid gang involvement in the future, the court chose to sentence him to the below-Guidelines sentence of 200 months for the conspiracy conviction. Combined with his mandatory consecutive 120-month sentence, Smith's sentence totals 320 months. Smith and Young now appeal.

## II. Allen Young

We review a defendant's sentence for reasonableness, crediting a sentence within the Guidelines range with a presumption of reasonableness. *United States v. Williams*, 436 F.3d 706 (6th Cir. 2006); *Rita v. United States*, 127 S. Ct. 2456, 2462 (2007). Reasonableness encompasses

both a substantive and a procedural component. *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006); *United States v. McBride*, 434 F.3d 470, 475 n.3 (6th Cir. 2006). "A sentence may be considered substantively unreasonable when the district court 'select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor.'" *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (quoting *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005)). Procedural reasonableness requires that the sentencing court adequately consider the § 3553(a) factors, including a correctly calculated Guidelines range. *See McBride*, 434 F.3d at 475-76; *see also Rita*, 127 S. Ct. at 2468 ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.").

      Young confines his argument, quite literally, to four sentences:

> Under *Booker* the District Court had the ability to sentence Appellant to a sentence within the guideline range or outside of it. The District Court chose to sentence Appellant to a total of 420 months. Appellant believes that although he should be punished for the acts he committed, he believes that the District Court's sentence does not fit the crime. In essence Appellant believes that his sentence is unreasonable under *Booker*.

This unusually terse argument implicates the rule that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citation omitted). As we presume Young's within-

Guidelines-range sentence reasonable, *Williams*, 436 F.3d at 708, and as Young makes no attempt

to rebut this presumption, we affirm.

III. Michael Smith

A. Fifth Amendment Claim

We review a constitutional challenge to a sentence de novo. *United States v. Beverly*, 369

F.3d 516, 536 (6th Cir. 2004). Smith contends that the district court violated his due process rights

by enhancing his sentence based on facts the court found by a preponderance of the evidence. We

have heard and rejected this argument before. *See, e.g.*, *United States v. Gates*, 461 F.3d 703, 707-08

(6th Cir. 2006); *United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006); *United States v. Coffee*,

434 F.3d 887, 898 (6th Cir. 2006). And the Supreme Court's recent decision in *Rita*, which tacitly

accepts the fact-finding role of the sentencing judge, casts further doubt on the argument ever

succeeding in the federal courts. 127 S. Ct. at 2465-66.

B. Rebuttable Presumption of Reasonableness Argument

Smith challenges the rebuttable presumption of reasonableness this court employs when

reviewing within-Guidelines sentences. *Williams*, 436 F.3d at 708. As with Smith's due process

claim, we review this constitutional challenge to his sentence de novo. *Beverly*, 369 F.3d at 536.

His position suffers from two fatal flaws. First, although his contention anticipates the gravitational-

pull argument advanced by Justice Souter in his *Rita* dissent, *see* 127 S. Ct. at 2487-88 (Souter, J.

dissenting), Justice Souter spoke alone. A majority of the Court sanctioned the appellate use of a

rebuttable presumption of reasonableness. *Id.* at 2468. Second, his argument seems only to suggest

that the panel's use of the presumption would violate the Constitution, not that the district court

viewed a within-Guidelines sentence as per se reasonable and failed to consider adequately the

§ 3553(a) factors. He cannot win this argument: after an extensive discussion of the various factors

which played into its sentencing decision, the district court sentenced him to less time than

prescribed by the Guidelines, so the court obviously understood its discretion under *Booker*.

C. Attribution of 1.5 Kilograms of Crack to Smith

In this procedural reasonableness argument, Smith contends that the district court erred in

holding him accountable for the Vice Lords' distribution of 1.5 kilograms of crack. We review for

clear error a "district court's finding that the criminal acts of others in a jointly undertaken criminal

activity are reasonably foreseeable and in furtherance of the jointly undertaken criminal activity."

*United States v. Tocco*, 306 F.3d 279, 284 (6th Cir. 2002). We also review a sentencing court's

determination of drug quantity for clear error. *United States v. Treadway*, 328 F.3d 878, 883 (6th

Cir. 2003).

U.S.S.G. § 1B1.3(a)(1)(B) provides that a coconspirator's offense level is to be determined

by taking into account "all reasonably foreseeable acts and omissions of others in furtherance of the

jointly undertaken criminal activity, that occurred during the commission of the offense of

conviction, in preparation for that offense, or in the course of attempting to avoid detection or

responsibility for that offense." The district court found that Smith was involved in the conspiracy during a time when the conspiracy sold at least 1.5 kilograms of crack, that these sales were part of his agreement as a member of the organization, and that the quantity was foreseeable to him. The court's Guidelines calculation therefore incorporated its conclusions.

Smith first argues that selling 1.5 kilograms of crack was not "within the scope" of his agreement to join the Vice Lords. *See United States v. Campbell*, 279 F.3d 392, 400 (6th Cir. 2002). Smith's argument attempts to divide the gang's drug sales and its "other activities" into two separate groups of gang activity. Smith may have been involved in gang activities, he argues, but he did not buy large quantities of drugs and thus his involvement was not bound up with the drug sales. As he explains, "Smith was associated with the Vice Lords and his agreement to conspire did not include the drug sales, rather that of low level gang member responsible only for doing what he was told by other gang members." But this distinction is artificial. Judging from the testimony of other members, the Vice Lords' *raison d'être* was selling crack. In "doing what he was told by other gang members" Smith necessarily facilitated the conspiracy in achieving its crack-selling objective. Selling crack was not one of several illegal ends sought by the Vice Lords—it was *the* end.

Second, he disputes whether 1.5 kilograms in crack sales were foreseeable to him because he was "not involved in the day to day drug sales of the group" and "did not have any position that would have permitted him to estimate the extent of the drug trafficking." As part of this argument, Smith charges the district court with failing to make the specific findings about the scope of his

involvement in the conspiracy required for the court's quantity determination. Under

§ 1B1.3(a)(1)(B), the district court must find "(1) that the acts were within the scope of the

defendant's agreement; and (2) that they were foreseeable to the defendant." *Tocco*, 306 F.3d at 289

(quoting *Campbell*, 279 F.3d at 399-400). But the court did make such findings:

> The Court, having heard several weeks of testimony from co-conspirators and Government witnesses, considering the totality—and considering the totality of the record, including the pre-sentence report and the addendum, finds that the United States has proven by a preponderance of the evidence this conspiracy involved the distribution of at least 1.5 kilograms of cocaine base and that this Defendant is accountable for that drug quantity as a member of a conspiracy.
>
> He will be held accountable for the drug activity that occurred on March 2001 until July 2002. This involvement supports the sale of at least, again, 1.5 kilograms of cocaine base. He's part of the organization, and therefore, be held accountable for the conduct of others as it was reasonably foreseeable to the defendant.
>
> While he was not perhaps as involved in the handling of drugs as some of the other defendants, he is not less culpable than the average participant. His involvement including selling drugs, storing firearms, carrying out violent acts as directed.

And the record supports the court's conclusions. As to quantity, the court heard testimony that

coconspirator Edward Sawyer delivered one to two ounces of powder cocaine to coconspirator

Jahmal Tory (whom he calls Kenny, an alias) every day during a six-month period in 2001. Jahmal

Tory testified that he purchased cocaine from coconspirator Ronnie Rodgers in multiple-ounce

quantities three or four times a day, which Rogers corroborated. 1.5 kilograms of crack cocaine is

54 ounces. This testimony alone accounts for substantially more than 54 ounces. The court's

conclusions regarding Smith's involvement and the foreseeability of the gang's crack sales also

evince no clear error, as the facts recounted above indicate. *See Williams*, 158 F. App'x at 652-53.

D. Smith's Request for a Minor Role Adjustment

Smith argues that the district court erred by refusing to grant him an offense-level reduction under U.S.S.G. § 3B1.2(b) because he played a minor role in the conspiracy. "Whether a defendant is entitled to a downward departure under § 3B1.2 depends heavily on factual determinations, which [the court] review[s] only for clear error." *Campbell*, 279 F.3d at 396 (citing *United States v. Searen*, 259 F.3d 434, 447 (6th Cir. 2001)).

The Guidelines provide a two-level offense-level reduction for a defendant who proves by a preponderance of the evidence, *United States v. Salgado*, 250 F.3d 438, 458 (6th Cir. 2001), that he was a "minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). As the comment makes clear, "This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him *substantially less culpable than the average participant*." *Id*. § 3B1.2 cmt. n.3(a) (emphasis added); *see also United States v. Miller*, 56 F.3d 719, 720 (6th Cir. 1995).

Smith argues that even if the district court did not err in attributing 1.5 kilograms to him, he deserves the reduction because he was substantially less involved in the operations of the conspiracy than the other participants (each of whom could be linked to 1.5 kilograms). He draws support from *United States v. Roberts*, 223 F.3d 377, 380 (6th Cir. 2000), which explains the basis for this argument as follows:

> In determining a defendant's role in the offense, a district court must measure the defendant's role against the relevant conduct attributed to her in calculating her base offense level. . . . Only if the defendant can establish that she played a relatively minor role in the conduct for which she has already been held accountable—not a minor role in any larger criminal conspiracy—should the district court grant a downward adjustment for minor role in the offense.

*Id.* (quoting *United States v. Rodriguez De Varon*, 175 F.3d 930, 943-44 (11th Cir. 1999) (en banc)).

Smith attempts to disturb the district court's finding that he did not play a "minor role" in the conspiracy by arguing (1) that he was not essential to the conspiracy, and (2) that he purchased small amounts of drugs when compared with the amounts purchased by other conspirators. But the district court's statements at both sentencing hearings belie this contention. In explaining that the Vice Lords' distributing 1.5 kilograms during the time he was active in the gang was foreseeable to Smith, the court also rejected Smith's argument that he was a minor participant: "While he was not perhaps as involved in the handling of drugs as some of the other defendants, he is not less culpable than the average participant. His involvement including selling drugs, storing firearms, carrying out violent acts as directed." This echoed the court's conclusion in Smith's pre-*Booker* sentencing hearing.

The district court's conclusion finds ample support in the record. Smith shot a "chronic"—a crack addict—to collect a debt, acted as a lookout for other gang members in an unsuccessful attempt to kill the gang's treasurer for embezzling (the gun jammed), stored weapons for the gang, and devised a new "pat down" procedure for security purposes. His sales may have been less than many of the members, but his involvement did not render him substantially less culpable.

IV.

For the foregoing reasons, we affirm Young's and Smith's sentences.