**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0817n.06

Nos. 13-2164/2205

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 28, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| THOMAS VERBURG (13-2164); | ) | COURT FOR THE WESTERN |
| RAMIRO RAMOS (13-2205), | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **Defendants-Appellants.** | ) | **OPINION** |

**Before: KEITH, MOORE, and STRANCH, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** In 2009, Thomas Verburg purchased property in California that was later used for purposes of growing marijuana. This marijuana was harvested and distributed to individuals like Ramiro Ramos, who sold it to lower-level dealers. After their indictment and arrest, both Verburg and Ramos agreed to plead guilty to conspiracy to manufacture 100 or more marijuana plants and distribute 100 kilograms or more of processed marijuana, as proscribed under 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(vii). After taking into consideration the applicable safety-valve provision, the district court sentenced Verburg to thirty months in prison. The district court denied the government's motion for a downward departure for Ramos, sentencing him to sixty months in prison, the statutory minimum.

On appeal, Verburg contends that the district court erred in denying him a mitigating-role adjustment. Furthermore, he posits that his sentence was procedurally unreasonable, because the district court failed to provide him a reasoned basis for its decision. Ramos argues that the court improperly denied the government's motion for a downward departure under U.S.S.G. § 5K1.1 by basing its decision on factors outside those listed in the Sentencing Guidelines.

Because Verburg played a substantial role in the conspiracy, we conclude that the district court did not err in denying him a mitigating-role adjustment. We also conclude that, while terse, the explanation given by the district court for Verburg's sentence was not procedurally unreasonable. Finally, because Ramos waived his right to appeal in his plea agreement, he cannot pursue his claim that the district court erred in denying him a downward departure. Thus, we **AFFIRM** the sentences for both Verburg and Ramos.

## I. BACKGROUND

On May 1, 2013, Thomas Verburg pleaded guilty to conspiracy to manufacture 100 or more marijuana plants and to distribute 100 kilograms or more of processed marijuana. R. 188 (Verburg Plea Agreement) (Page ID #486). During Verburg's plea colloquy, Verburg stated that he had contributed to the down payment for a piece of property on Trinity Center Road, in California. R. 426 (Verburg Plea Hr'g Tr. at 20–21) (Page ID #2115–16). He originally kept this property in his own name, before later deeding it to his son Daniel. *Id.* at 22 (Page ID #2117). After purchasing the Trinity Center property, Verburg helped his sons Brian and Daniel build living quarters on the land and, at some point, learned that the property was being used to grow and sell marijuana. *Id.* at 10 (Page ID #2105); *id.* at 22 (Page ID #2117). Verburg assisted

with the collection of proceeds from the sale of this marijuana. *Id.* at 23 (Page ID #2118). On at least two occasions, he traveled from Michigan to California to deliver these proceeds directly to his sons. *Id.* Verburg's Presentence Investigation Report ("Verburg PSR") concluded that he "had knowledge of the sale of over $750,000.00 in marijuana shipped by his two sons," a fact undisputed by Verburg at his sentencing hearing. Verburg PSR at ¶ 105; R. 427 (Verburg Sentencing Hr'g Tr. at 10) (Page ID #2131); *see also United States v. Adkins*, 429 F.3d 631, 632–33 (6th Cir. 2005) (concluding that failure to object to one's presentencing report constitutes acceptance of the factual allegations contained within the report). For his assistance, Verburg received a cut of the conspiracy's profits—although, according to Verburg, "there was no hard and fast percentage" to this division. Verburg PSR at ¶ 96.

Ramos was one of the major recipients of the marijuana grown on the Trinity Center property, having accepted several substantial shipments from the Verburgs in 2011. R. 506 (Ramos Plea Hr'g Tr. at 10) (Page ID #2675). On May 1, 2013, Ramos pleaded guilty to conspiracy to manufacture 100 or more marijuana plants and to distribute 100 kilograms or more of processed marijuana. R. 196 (Ramos Plea Agreement at ¶ 1) (Page ID #514). Verburg and Ramos were sentenced separately.

During Verburg's sentencing hearing, counsel for Verburg requested that his client "be awarded a minimal or a mitigating role adjustment pursuant to [U.S. Sentencing Guidelines Section] 3B1.2." R. 427 (Verburg Sentencing Hr'g Tr. at 3) (Page ID #2124). Although the government did not object to a minor-role reduction, the PSR did not recommend a reduction. Verburg PSR at ¶ 5. The court denied Verburg's request, explaining:

3

> A mitigating role is a role that's designed for a very narrow construction. There are a few people that qualify for it, people that drop into something, people that are asked to hold a bag for somebody while they go in the store, that kind of thing. But this is not. This is a long way away from that. This is somebody assisting in the collection of proceeds, had knowledge of a sale of three-quarters of a million dollars' worth of marijuana, two sons, and there's some real troublesome things about the nature of the lifestyle being lived by people that are way beyond their income. So no, this minimal role is absolutely out. Your objection's noted, though.

R. 427 (Verburg Sentencing Hr'g Tr. at 3) (Page ID #2124–25). Verburg also requested an additional "downward variance," in addition to concurring with the government's motion for a downward departure for substantial assistance under § 5K1.1. *Id.* at 5 (Page ID #2126). The district court granted a one-level downward departure pursuant to the government's motion, but denied Verburg's request. For the balance of the hearing, the district court discussed, in varying detail, the § 3553(a) factors. It ultimately sentenced Verburg to thirty months of imprisonment, a sentence below the applicable guidelines range of 37 to 46 months. *Id.* at 21 (Page ID #2142); Verburg PSR at ¶¶ 145, 199.

Prior to Ramos's sentencing hearing, the government also filed a § 5K1.1 motion, requesting that the district court grant Ramos a downward departure on the basis of his substantial assistance. *See* R. 387 (Ramos Sentencing Hr'g Tr. at 4) (Page ID #1981). In denying this motion, the district judge focused exclusively on factors outside of those related to the defendant's assistance—examining Ramos's prior criminal record, for instance, and the motivation behind the government's original charging decision. Neither Ramos nor his counsel objected to the district judge's conclusion.

Both Verburg and Ramos have timely appealed their sentences.

## II. VERBURG'S SENTENCE

On appeal, Verburg contends that the district court erred in denying him a mitigating-role adjustment. As Verburg has pointed out, in this nine-person conspiracy, "only one other participant . . . had a lesser quantity attributed to her than did Mr. Verburg." Appellant Br. at 17. Thus, "[m]athematically speaking, Mr. Verburg was clearly less culpable than most other participants." *Id.* at 18 (internal quotation marks omitted). Furthermore, Verburg argues that "he was not involved in the planning of the conspiracy, was not an essential part of it, and lacked knowledge and understanding of the scope and structure of the enterprise." *Id.* at 19. In addition, Verburg argues that his sentence was procedurally unreasonable, because the district court did not fully address his arguments for a variance; in his view, it did not "provide a reasoned basis for its sentencing decision." *See id.* at 13, 36.

### A. Mitigating-Role Adjustment

Section 3B1.2 of the Sentencing Guidelines provides:

Based on the defendant's role in the offense, decrease the offense level as follows:
  (a) If the defendant was a minimal participant in any criminal activity, decrease by **4** levels.
  (b) If the defendant was a minor participant in any criminal activity, decrease by **2** levels.
In cases falling between (a) and (b), decrease by **3** levels.

U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 3B1.2 (2013). The comments accompanying this section state that a minimal participant "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." *Id.* at cmt. n.4. Minor participants are "less culpable than most other participants, but whose role could not be described as minimal." *Id.* at cmt. n.5. "The determination whether to apply subsection (a) or

subsection (b) . . . is based on the totality of the circumstances," making the district judge's final conclusion heavily fact-dependent. *Id.* at cmt. n.3(c).

The defendant "bears the burden of proving a mitigating role in the offense by a preponderance of the evidence." *United States v. Roberts*, 223 F.3d 377, 379 (6th Cir. 2000). We have traditionally reviewed a district court's denial of a mitigating-role adjustment for clear error. *Id.* at 379–80. In *United States v. Gort-DiDonato*, 109 F.3d 318, 320 (6th Cir. 1997), however, we announced a two-part standard of review for examining aggravating-role adjustments. Under this standard, a district court's factual findings are reviewed for clear error, while its legal conclusions are reviewed de novo. *Id.* Our decision in *United States v. Owusu*, 199 F.3d 329 (6th Cir. 2000), appeared to extend this two-part framework to cover mitigating-role adjustments as well. *Id.* at 337 n.2. Yet we need not resolve this legal question today, as our result would be the same under either standard.

Verburg argues "that he qualified for at least a minor role reduction, if not a minimal role reduction." Appellant Br. at 23. Verburg's request for a minimal-role adjustment fails on its face. As we explained in *United States v. Gaitan-Acevedo*, "[u]nder the sentencing guidelines, a minimal participant is someone who played a single, limited role in the conspiracy." 148 F.3d 577, 595 (6th Cir. 1998) (citation omitted). Verburg's involvement, from the beginning of the conspiracy (purchasing the Trinity Center property and building living quarters on it) to its end (collecting money and physically transporting funds to California), clearly falls outside the scope of this minimal-participant umbrella.

6

On his request for a minor-role adjustment, Verburg bases his claim on two different grounds. First, he notes that he was found accountable for 106.34 kilograms of marijuana for guideline computation purposes. Appellant's Br. at 18. The only co-defendant held accountable for less was Catherine Weitz (accountable for 10.63 kilograms). Verburg PSR at ¶ 116. By contrast, several co-defendants were held accountable for nearly 900 kilograms of marijuana. *See id.* at ¶¶ 106–29. Second, he argues that he played a non-essential role in the conspiracy, "act[ing] as a courier essentially transporting money back to his kids." R. 427 (Verburg Sentencing Hr'g Tr. at 8) (Page ID #2129).

Both of Verburg's arguments are unavailing. With respect to Verburg's first contention—the amount of marijuana—we have held previously that "[d]efendants may be minimal or minor participants in relation to the scope of the conspiracy as a whole, but they are not entitled to a mitigating role reduction if they are held accountable only for the quantities of drugs attributable to them." *United States v. Campbell*, 279 F.3d 392, 396 (6th Cir. 2002) (citing *United States v. Walton*, 908 F.2d 1289, 1303 (6th Cir. 1990)). In *Campbell*, we went on to deny the defendant's claim for a mitigating-role adjustment, noting that the defendant had been held "accountable for at least 100, but less than 200 grams of cocaine, which was the amount of drugs that [defendant] actually purchased and distributed or used." *Id.* (internal quotation marks omitted). Thus, "the district court held [defendant] accountable only for the quantity of drugs attributable to him," rather than the full amount involved in the conspiracy. *Id.*

Like the defendant in *Campbell*, Verburg was, for purposes of sentencing guideline computations, found accountable only for the quantity of drugs attributable to him: 106.34

kilograms of marijuana.[1]    Section 2D1.1 of the Sentencing Guidelines provides that drug offenses involving at least 100 but not more than 400 kilograms of marijuana have a base offense level of 26.   U.S.S.G. § 2D1.1 (2013).   By comparison, the Guidelines provide a base offense level of 30 for members of the conspiracy found accountable for 700 to 1000 kilograms of marijuana. *Id*.   In other words, by prescribing Verburg a lower base offense level, the Guidelines have *already* taken into account his reduced role within the conspiracy.   *See, e.g.*, *Roberts*, 223 F.3d at 380 ("The thrust of Roberts's argument is that his minimal role in the overall conspiracy warrants a § 3B1.2 adjustment, even though the larger conspiracy was not taken into account in establishing Roberts's base offense level.   As we have in the past, we reject this argument.").   Our decision to reject Verburg's argument is consistent with a majority of circuit courts that have considered the same issue.   *Id.* (collecting cases).

Verburg's second argument—that he played a non-essential role in the conspiracy—is likewise unconvincing.   To be clear, "[a] defendant does not qualify for a mitigating role reduction merely because someone else planned the scheme and made all the arrangements." *United States v. Sheafe*, 69 F. App'x 268, 270 (6th Cir. 2003) (citing *United States v. Miller*, 56 F.3d 719, 720 (6th Cir. 1995)).   Rather, "[a] defendant who plays a lesser role in a criminal scheme may nonetheless fail to qualify as a minor participant if his role was *indispensable or critical to the success of the scheme*, or if his importance in the overall scheme was such as to

---

[1]This number was obtained by dividing the total value of the marijuana sales attributable to Verburg ($750,000) by the cost per pound of marijuana ($3200), and then converting this number to kilograms for Guideline purposes. *See* Verburg PSR at ¶ 104.  Verburg did not object to being held accountable for this amount. R. 427 (Verburg Sentencing Hr'g Tr. at 10) (Page ID #2131).

justify his sentence." *United States v. Salgado*, 250 F.3d 438, 458 (6th Cir. 2001) (citation omitted) (emphasis added); *cf. United States v Samuels*, 308 F.3d 662, 672 (6th Cir. 2002) ("As Samuels played a *key role* in brokering the drug transaction, he did not play a limited role in the conspiracy. Instead, he was indispensable to the completion of the operation.") (emphasis added). Here, a number of facts illustrate the critical role Verburg played within this conspiracy. Purchasing the Trinity Center property, building structures on the property, and delivering collection proceeds from Michigan to California—each of these actions evidence the key part Verburg played in this conspiracy. While Verburg might not have planned or directed operations, he certainly "was a fully integrated member of a substantial drug conspiracy." *United States v. Bartholomew*, 310 F.3d 912, 924–25 (6th Cir. 2002) (upholding district judge's denial of a minor- and minimal-role adjustment for member of conspiracy who offered his property "as a base of operations" and "personally received at least one large shipment of marijuana.") The district court did not err in refusing to grant Verburg a minor-role reduction for his participation.

**B. Procedural Unreasonableness**

In determining whether a sentence is procedurally reasonable, we must consider whether the district court "'(1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range.'" *United States v.*

*Barahona-Montenegro*, 565 F.3d 980, 983 (6th Cir. 2009) (quoting *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007)).  We review sentences under an abuse-of-discretion standard in cases where a party has objected to a procedural defect at his sentencing hearing.  *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010).  In cases where a party has not objected at sentencing, we review for plain error.  *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc).  To demonstrate plain error, the defendant must show "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings."  *Id.* at 386 (citing *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004)) (internal quotation marks omitted).

As an initial matter, we note that during Verburg's sentencing hearing, Verburg's counsel raised a single objection—to the district court's decision to deny his request for a mitigating-role adjustment.  R. 427 (Verburg Sentencing Hr'g Tr. at 3) (Page ID #2124).  We have already discussed this objection above.  The arguments presented on appeal by Verburg regarding the procedural reasonableness of his sentence were not presented to the district court.

The next issue is whether the district court properly considered the § 3553(a) factors and, if not, whether the district court committed plain error.  As we have stated, the key "question is whether the record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him."  *Vonner*, 516 F.3d at 387 (quoting *Rita v. United States*, 551 U.S. 338, 358 (2007) (internal quotation marks omitted)); *see also United States v. Lapsins*, 570 F.3d 758, 773 (6th Cir. 2009) (concluding that the district judge must show that "he has considered

10

the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking

. . .").  Again, in *Vonner,* we noted that "[a]lthough Congress requires a court to give 'the

reasons' for its sentence, 18 U.S.C. § 3553(c), it does not say that courts must give the reasons

for rejecting any and all arguments by the parties for alternative sentences."  516 F.3d at 387.

Verburg's sentencing transcript indicates that the district court judge engaged in a

sufficient discussion of the various § 3553(a) factors.[2]  The district judge, for instance, discussed

"the nature and circumstances of the offense and the history and characteristics of the

defendant," as required under § 3553(a)(1).  The transcript reveals a conversation surrounding

(1) Verburg's role in the conspiracy, *see id.* at R. 427 (Verburg Sentencing Hr'g Tr. at 6–9)

(Page ID #2127–30); (2) his military service, *see id.* at 13–14 (Page ID #2134–35); (3) his legal

---

[2]§ 3553(a) reads, in relevant part:
 **(a)** **Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
 **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
 **(2)** the need for the sentence imposed—
   **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   **(B)** to afford adequate deterrence to criminal conduct;
   **(C)** to protect the public from further crimes of the defendant; and
   **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
 **(3)** the kinds of sentences available;
 **(4)** the kinds of sentence and the sentencing range established for—
   **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
   ***
18 U.S.C. § 3553.

education, *see id.* at 17–19 (Page ID #2138–40); and (4) his "fail[ure] to put the brake on [his] sons, *see id*. at 21 (Page ID #2142). To be sure, the district judge did not discuss every one of the circumstances that counsel for Verburg raised, such as Verburg's employment history and criminal record. *See id.* at 15 (Page ID #2136); Appellant Br. at 31–32. Yet, as we have made clear, a court need not address every single circumstance raised by the parties at sentencing. *See Vonner*, 516 F.3d at 387. What *is* required is that the court carefully consider the arguments presented, and articulate a reasoned basis for its final decision. *Id.* The district court judge has done so here.

Verburg relies upon our recent decision in *United States v. Ferguson*, 518 F. App'x 458 (6th Cir. 2013), where we determined a sentence to be procedurally unreasonable because the "District Judge did not: 1) consider all of the defendant's arguments in support of a downward variance; [and did not] 2) consider all of the § 3553(a) factors." *Id.* at 463. Yet *Ferguson* involved circumstances materially different from those at issue in this case. The omission at issue in *Ferguson* concerned "the most compelling evidence in the record favoring a downward variance." *Id.* at 466. In contrast, the district judge here did address the major contentions made by Verburg during his hearing, including his professional background, his role in the conspiracy, and the nature of the crime itself. *See, e.g.*, R. 427 (Verburg Sentencing Hr'g Tr. at 20) (Page ID #2141) ("So this is a serious offense in that it shows complete lack of respect for law, but it's more than that . . . . This was a sophisticated packaging organization where monies and accounts were kept of how much was being sent to this person and that."). Any omissions do not appear to have had an impact on the length or nature of Verburg's sentence. Second, and relatedly,

neither Verburg nor his counsel objected to the judge's explanation of the sentence—had either objected, the judge would have had an opportunity to correct any inadvertent omissions.

The district court also must, under § 3553(a), discuss "the need for the sentence imposed" and "the kinds of sentences available," including the applicable range as calculated by the Guidelines. In this respect, the district judge adopted a more cursory approach, devoting only a few moments to note that

> [T]here has to be an adequate deterrence to criminal conduct from this kind of circumstance, and there has to be a just punishment component in that manner. This is a serious offense in that it shows a marked effort to thwart any way that the government could determine what was going on.

*Id.* at 20–21 (Page ID #2141–42). The district judge then applied the safety-valve provision, 18 U.S.C. § 3553(f), and sentenced Verburg to thirty months of imprisonment, followed by four years of supervised release and payment of a $1000 fine. *Id.* at 21–22 (Page ID #2142–43).

To be sure, the district judge *could* have done more. He could have discussed the seriousness of the offense at issue in greater detail or given a more thorough rationale for his sentencing decision. He might have drawn a closer connection between the nature and circumstances of the offense and the need to impose a lighter (or heavier) sentence on Verburg. Yet nothing in the record below suggests that the district judge committed plain error. Verburg's sentence was not procedurally unreasonable.

### III. RAMOS'S SENTENCE

With respect to the legal issues surrounding Ramos's sentence, two provisions within his plea agreement stand out. First, depending on the nature and extent of Ramos's cooperation, the plea agreement authorized the government, in its "sole discretion," to "file a motion for departure

or reduction of sentence pursuant to Sentencing Guidelines § 5K1.1, 18 U.S.C. § 3553(e), and/or Rule 35(b) of the Federal Rules of Criminal Procedure." R. 196 (Ramos Plea Agreement at ¶ 7.D) (Page ID #518). And second, Ramos waived the right to appeal any sentence determined by the district court, with certain limited exceptions. This provision reads, in full:

> [T]he Defendant knowingly waives the right to appeal any sentence that is at or below the maximum guideline range as determined by the Court before any upward departure or variance, and the manner in which the sentence was determined on the grounds set forth in Title 18, United States Code, Section 3742. The Defendant also retains the right to appeal those objections preserved at sentencing that the Court incorrectly determined the final Guideline range. In addition, the Defendant retains the right to appeal a sentence that exceeds the statutory maximum or is based upon an unconstitutional factor, such as race, religion, national origin or gender.

R. 196 (Ramos Plea Agreement at ¶ 11) (Page ID #521–22). Unfortunately for Ramos, this appeal-waiver clause prevents us from taking up the merits of his argument that the district court erred in denying the government's motion § 5K1.1 motion.

As we have noted elsewhere, "[i]t is well settled that a defendant may waive any right, even a constitutional right, by means of a plea agreement. Only challenges to the validity of the waiver itself will be entertained on appeal." *United States v. Toth*, 668 F.3d 374, 377 (6th Cir. 2012) (internal quotation marks and citations omitted). In order to examine the validity of Ramos's appeal waiver, we must first determine whether "the claim raised on appeal falls within the scope of the appellate waiver." *Id.* at 378. On this issue, the appellant's brief could not be clearer in demonstrating that Ramos's challenge falls *outside* the relevant scope. The first sentence of his argument summary states that "[d]efendant-[a]ppellant argues that that [sic] he is entitled to relief under 18 U.S.C. § 3742(a)(2)"—the very statute singled out in his plea

14

agreement—"because the district court imposed a sentence that was the result of an incorrect application of the sentencing guidelines." Appellant Br. at 8.

Next, we must examine whether an exception to the appeal-waiver provision applies. This particular provision allows Ramos to retain his right to appeal (1) if his sentence exceeds the statutory maximum, (2) if his sentence is based upon some unconstitutional consideration, or (3) if his sentence involves an incorrect determination of the "final Guideline range" despite Ramos's "objections preserved at sentencing." R. 196 (Ramos Plea Agreement at ¶ 11) (Page ID #521–22).

None of these exceptions applies to this case. First, Ramos was sentenced to sixty months of imprisonment—the statutory minimum. R. 387 (Ramos Sentencing Hr'g Tr. at 17, 20) (Page ID #1994, 1997). Second, Ramos has not argued that his sentence is based on unconstitutional considerations. Instead, his argument is that the district judge erred by relying upon the § 3553(a) factors in denying the government's request for a downward departure under § 5K1.1. Third, and most importantly, Ramos did not preserve his objection for appeal.

While we are sympathetic to Ramos's argument, the plain language of his plea agreement requires that he object to any perceived sentencing errors affecting his "final Guideline range" while at his sentencing hearing. He did not do so. At the beginning of Ramos's hearing, the government moved for the district court to grant Ramos a downward departure under § 5K1.1 based on Ramos's substantial assistance. *Id.* at 4–6 (Page ID #1981–83). After indicating his reluctance to grant the motion, the district judge turned to Ramos's counsel, asking for a response. Ramos's counsel stated only that "I would concur with the government's motion." *Id.*

at 6 (Page ID #1983).  After some additional exchange, the judge announced that he would deny

the § 5K1.1 motion.  *Id.* at 7–9 (Page ID #1984–86) ("I'm going to deny the 5K1.1 levels, Mr.

Bruha.  I think you have the ability to utilize a 5K1 motion here, but you're already, due to your

charging decisions, you're already—due to the nature of the matter before the Court, what you're

doing is you're manipulating a sentence that I think has already had significant leverage given to

it. . . . I don't very often deny a 5K1, but I think I will in this case.  I think there's grounds for

doing that.").  At this point, the district court turned its attention to Ramos's motion for a

variance:

> **The Court:**  I believe you have a motion for variance here, is that right?
> **Counsel for Ramos:**  Yes
> **The Court:**  You may be heard.  I think you kind of hear where I'm coming from.
> **Counsel for Ramos:**  Yes.  I did file the motion for a variance, Your Honor, and I
> think that in looking at Mr. Ramos's positives . . . .

*Id.* at 9 (Page ID #1986).  At no point during the § 5K1.1 discussion did Ramos's counsel object

to the district court's decision, or even note that the district court appeared to be denying the

§ 5K1.1 motion based on § 3553(a) factors, rather than on an evaluation of the nature and extent

of Ramos's assistance.  Near the end of the hearing, the district judge again gave Ramos's

counsel an opportunity to object.  *Id.* at 20 (Page ID #1997) ("Any objection that defense would

note to this sentence?").[3]  Again, Ramos's counsel responded in the negative.  *Id.* ("No legal

---

[3]Ramos points out that the language used here—"Any objection that defense would note
to this sentence?"—departs from the language used in *Bostic*.  Appellant Reply Br. at 2–3.  In
*Bostic*, we held that, "before adjourning the sentencing hearing," the district court must "ask the
parties whether they have any objections to the sentence just pronounced that have not
previously been raised.  If the district court fails to provide the parties with this opportunity, they
will not have forfeited their objections and thus will not be required to demonstrate plain error on
appeal."  371 F.3d at 872–73 (footnote omitted).  Ramos is correct:  the phrasing of the district

objection, your honor."). Based on these exchanges, we cannot conclude that Ramos retained his right to appeal by preserving his objection at his sentencing hearing.

Ramos also argues that he preserved his objection by urging in his sentencing memorandum that the district court should "consider the assistance that he provided as detailed in the government's motion and brief." R. 312 (Ramos Sentencing Mem. at 6) (Page ID #1464). However, a sentencing memorandum—written and submitted *before* one's sentencing hearing—cannot be considered a suitable way to preserve an objection to actions taken *at* one's sentencing hearing. *See Vonner*, 516 F.3d at 385–86. Additionally, the plain language of the plea agreement states that Ramos may only appeal "objections preserved at sentencing." *See, e.g.*, *United States v. Flowers*, 428 F. App'x 526, 529 (6th Cir. 2011) (applying appeal-waiver provision where plea agreement's plain terms required that objections be "preserved at sentencing").

As a final matter, we must decide whether the plea was made "knowingly and voluntarily." *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001). Ramos has offered no evidence to suggest otherwise. On the contrary, the plea agreement's language states explicitly that Ramos entered the agreement freely, knowingly, and voluntarily. *See, e.g.*, R. 196 (Ramos Plea Agreement at ¶ 16) (Page ID #524). During Ramos's plea colloquy, he affirmed that he

---

court's question is not an exact match. But the *Bostic* court anticipated "the difficulty of parsing a transcript to determine whether during a sentencing hearing . . . a party had a meaningful opportunity to object." *Id.* at 872 n.6. Following this logic, we have concluded, in prior cases, that district judges need not repeat the *Bostic* question verbatim. *See United States v. Wilson*, 232 F. App'x 540, 545 (6th Cir. 2007) (upholding "Now, are there any questions regarding the sentence that I have imposed?" against a *Bostic* challenge). The district judge's intent in this case was clear—to seek and put on the record any previously unmentioned objections.

understood the plea's terms and voluntarily agreed to them. R. 506 (Ramos Plea Hr'g Tr. 4, 7–8) (Page ID #2669, 2672–73). Nor does Ramos argue on appeal that his plea was made unknowingly or involuntarily.

To be clear, our decision today should not be read as an endorsement of the district court's denial of the government's § 5K1.1 motion. Had Ramos objected to the district judge's decision below, his appeal might well have merit. As Ramos has pointed out, the district judge's decision to deny the government's § 5K1.1 motion was based exclusively on what have traditionally been regarded as § 3553(a) factors. Tellingly, the district judge did not spend any time discussing the nature and extent of Ramos's assistance to the government. Section 5K1.1 motions are made only where a defendant provides substantial assistance to the government; in deciding whether to grant these motions, the Sentencing Guidelines advise judges to evaluate "(1) the significance and usefulness of the defendant's assistance"; "(2) the truthfulness, completeness, and reliability of any information or testimony provided"; "(3) the nature and extent of the defendant's assistance"; "(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance"; and "(5) the timeliness of the defendant's assistance." U.S.S.G. § 5K1.1. Although we have determined that a sentencing judge may look to factors outside a defendant's substantial assistance, we have stressed that such factors are secondary, rather than primary, considerations. *See United States v. Grant*, 636 F.3d 803, 817 (6th Cir. 2011) (en banc) ("Determining the extent to which a sentence should be reduced would, *as a matter of course*, include consideration of the defendant's activities on behalf of the government and how much his assistance helped in the investigation or prosecution

of another.") (emphasis added). If Ramos had objected at his sentencing to the district judge's method of evaluating the merits of the government's § 5K1.1 motion, the district judge would have had an opportunity to reconsider and utilize the proper methodology.

Ramos's appeal waiver in his plea agreement, however, prevents us from addressing the merits of whether the district judge actually committed legal error in the proceedings below in the absence of an "objection[] preserved at sentencing that the [district judge] incorrectly determined the final Guideline range." R. 196 (Ramos Plea Agreement at ¶ 11) (Page ID #521–22). That appeal-waiver provision governs this case, and leads us to deny Ramos's requested relief.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the sentences for both Verburg and Ramos.